Holland & Pettitt *v.* Drake et al.

---

JOHN HOLLAND AND WILLIAM B. PETTITT *v.* J. M. DRAKE AND OTHERS.

1. One of the members of an insolvent firm can not, either before or after dissolution of the partnership, make a valid assignment of all its effects for the benefit of creditors, against the will of a copartner, or without his assent when he is present or accessible.

2. Where an assignment is so made against the will of the non-executing partner, or when he is present and not assenting, and he subsequently ratifies the assignment, the ratification will relate back to the time of executing the assignment, and give it effect from that date; but not so as to defeat the rights of third persons, acquired in good faith in the meantime.

3. Where, in such a case, an attachment had been levied upon the property, between the date of the assignment and its ratification, and by agreement between the attaching creditor, the assignee, and the partners, the property was delivered by the sheriff to the assignee, to be by him sold in place of the sheriff, and the proceeds to stand in place of the property, and be applied to the attaching creditor's judgment when obtained, if the court should hold the attachment good; in an action by the attaching creditor against the assignee and the partners, to have the proceeds of the property so applied: *Held*, that the defendants were estopped from setting up as a defense that the lien of the attachment was lost by delivery of the property to the assignee under said agreement.

4. In such action it was not necessary to make the partnership creditors parties defendant.

ERROR to the Common Pleas of Cuyahoga county. Reserved in the district court.

Tracy and McKay were partners in the "grain and feed business," in the city of Cleveland, Tracy being the active and managing member. On the 13th of December, 1867, the firm then being insolvent, McKay caused a notice of the dissolution of the partnership to be published in the city papers; and afterward, on the 20th of the same month, he executed to J. M. Drake, and filed in the probate court, a general assignment of the property and effects of the company, for the benefit of all its creditors. On the last named day, but subsequently to the execution and filing of the assignment, Holland and Pettitt caused part of the property so assigned to be seized upon an attachment issued in an action which they had lately brought against the firm, and in which they afterward recovered judgment. Prior to the execution of the assignment Drake had consented to act as such assignee, but the assignment was not in fact delivered to him, or he made aware of its existence, until some days after the levy of the attachment; but, when notified thereof, he accepted the same, and qualified as such trustee. At the time McKay executed the assignment, his copartner, Tracy, was in the city, but was not consulted, and when informed by McKay of its execution, refused to assent, and he did not assent until some time after the levy of the attachment. By mutual agreement between the parties interested, Holland and Pettitt, Drake and McKay, the attached property was then delivered by the sheriff to Drake, as assignee, " to be sold by him instead of the sheriff," and the proceeds to "stand in place of the property, and be applied in payment of Pettitt and Holland's judgment, in case the court should hold the attachment a good lien."

The assignee sold the property in pursuance of this agreement, and brought the money into the probate court, and Holland and Pettitt filed their petition therein against Drake, McKay, and Tracy, asking to have the money adjudged and paid to them, in preference of the other creditors. On hearing of this petition it was dismissed, the probate court holding that the assignment had precedence of

the attachment, and that the fund should be distributed *pro rata* among all the creditors. On proceedings in error this judgment was affirmed in the common pleas, and Holland and Pettitt having filed a petition in error in the district court to reverse the judgment of affirmance, the case was reserved for decision here.

*Estep & Burke*, for plaintiff in error:

The important question in this case is, whether one partner, against the refusal of his copartner to join therein, can make a valid assignment of the partnership assets, to a trustee of his own selection?

We maintain he can not, and refer to the following authorities: Burrill on Assignments, 43–65 inclusive; *Harrison* v. *Sterry*, 5 Cranch, 289; *Pearpont* v. *Graham*, 4 Wash. C. C. 232; *Deckert* v. *Gilbert*, 4 Watts & Serg. 454; *Kirby* v. *Ingersoll*, 1 Harrington, 172; *Hughes* v. *Ellison*, 5 Mo. 463; *Drake* v. *Rogers*, 6 Mo. 317; *Dana* v. *Lull*, 17 Vt. 390; *Deming* v. *Colt*, 3 Sandf. 284; 2 Ib. 292; *Hayes* v. *Heyer*, 2 Ib. 284, 293; *Kemp* v. *Darnley*, Duer, 1; *Fisher* v. *Murray*, 1 E. D. Smith, 341.

*Elwell & Marvin*, for Drake:

The only objection that can be raised to said assignment is that it is a fraud on the rights of the partners, inasmuch as it destroys the partnership. If this is a wrong, it certainly does not injure the creditors, and neither of the partners make any complaint. The partner who was not consulted is the only person who has a right to complain. No one else can, for he alone was injured.

The court will sustain an assignment made by one partner for the benefit of all the creditors. Burrill on Assignments, 42–44, 51.

No one but an absent partner can question the validity of an assignment executed by his copartner. It is not void "*per se*," but only voidable at the election of the absent partner. 4 Washington C. C. 232; *Sheldon* v. *Smith*, 28

Barb. 593; 4 N. Y. Digest, 191, 311. As to a subsequent ratification, see 5 Hill, 107; Story on Assign., secs. 239–244.

Admitting that one partner can not, in law, make such an assignment, yet he might, in view of the fact that the firm was insolvent, file his bill in equity, asking that the firm property might be sold for the benefit of all the creditors. And if he has done what a court of equity would have done, then the court will sustain the act.

*Prentiss, Baldwin & Ford,* for defendants in error :

I. This case, so far as the power of one partner, McKay, is concerned, to make a general assignment of all the personal property of a firm consisting of two partners, does not raise the abstract question of such a power in Ohio, under our law forbidding preferences, and making a ratable and equal distribution; but if it did, there is very much to be said in favor of such a power. But this case stands upon the following circumstances, differing it from the mere abstract question :

1. The firm was insolvent.

2. An attachment had been got out, of course, for fraud, and that of Tracy, the partner who, it is claimed, did not join in the assignment.

3. Tracy was applied to to join, and assented, but then expressed a wish to see his counsel about it, and after doing so declined, and subsequently deliberately assented again. He never objected to it, and his subsequent express ratification of it made it good from the beginning.

II. Was it a lien or incumbrance plaintiffs in error had after the sheriff gave up the property ? The attachment was gone; if plaintiff had anything, it was an equity, so that a court of chancery could have enforced their remedy, and that court only, and the probate court could not—the expression lien or incumbrance referring to some plain *legal* right.

It seems plaintiffs are willing to recognize the assignee, as such, under this assignment, and place the attached property in his hands, giving up the attachment; but they say

they have an agreement from him that he will not do his duty, and administer the assignment as the law requires him to do, but do so for their exclusive benefit. No court of equity would admit this as a good title for relief. Again, when the motion to dissolve the second attachment was declared for plaintiffs, they had no subsisting attachment, for it was already dissolved by their own act of giving up the property, and the refusal of the court to dissolve it, on the ground that Tracy was guilty of no fraud, would not give vitality to it. And now plaintiffs call on the probate court to require the assignee to violate his duty as such—go on and sell the attached property after the sheriff has surrendered it, and account to them for the whole of it, because he has promised to do so. Why did not they have the sheriff hold on to it if they had a good title? Why did they seek to entrap the assignee into an agreement contrary to his duty, and use him as their mere instrument? The contract and promise were void, against public policy, and against the spirit of the statute, and against the rights of the rest of the creditors. And there was no lien or incumbrance, and no remedy, unless to go into a court of equity and move there. *Hyde* v. *Olds*, 12 Ohio, 591; Story on Part. 322, 327, 328; *Hitchcock* v. *St. John*, 1 Hoffm. 511; 1 Hardy, 87; Burrill on Assign. 51, 306, 340; *Sheldon* v. *Smith*, 28 Barb. 593; *Robinson* v. *Gregory*, 29 Barb. 560.

WELCH, C. J. The important question in the case is, whether one member of an insolvent firm, either before or after dissolution of the partnership,-can make a valid assignment of all its effects for the benefit of creditors against the will of a copartner, or without procuring his assent when present or accessible. Until this question is decided in the negative, it is unnecessary to consider the questions whether this firm was dissolved by the published notice, and if so, whether such dissolution had the effect to lessen or take away the power to assign. The important question is, did the power ever exist?

The authorities and decisions on this subject are quite

numerous, and are far from being uniform. It is deemed unnecessary here to attempt a review of them, or to enter into or repeat the reasoning *pro* and *con* on which they assume to stand. The leading cases will be found enumerated and referred to in Parsons on Partnerships, 165 (notes *l, m, n, o*), and Story on Partnerships, sec. 101, note 2. We have examined these cases with much care and consideration, and think the weight of authority, as well as the better reasoning, is with those who deny the validity of such an assignment. The power to make it is not within the contemplation of an ordinary partnership contract. It is not a power to act as *agent* of the company in carrying on its business and paying its debts, but a power to *appoint* an agent and to clothe him with all the powers of the partners. If the power exists where there are only two partners, as in the present case, it must also be conceded where there are many. It is easy to see that in many such cases it might be exercised to the great injury and annoyance of the non-consenting members of the firm. It is often the case, especially in times of financial depression, that a firm, if forced into liquidation, and their effects sold under the hammer, would prove insolvent, whereas if suffered to struggle on they would become solvent and successful. In such cases a single member, without the concurrence of the creditors, could, by the exercise of the power in question, bring it to an end, and place all its interests in the hands of a trustee of his own selecting; or, by threatening to exercise the power, he could compel his copartners to submit to unjust terms of forbearance. True, he might, in the absence of such a power, where the terms of the partnership did not forbid it, by a proceeding in equity dissolve the firm and place its assets in the hands of a receiver. But in that case the receiver would be chosen and appointed by the court, and not by the partner, and the other members of the firm would be consulted and heard. We think the safer and juster rule is to require the assent of all the partners, either actually given or to be fairly implied from

the situation of the parties, or from the manner of conducting the business of the firm.

But it is claimed that the assignment took effect from the date of its execution by McKay, because its subsequent approval by Tracy related back and took effect from the date of its execution, which was prior to the attachment. As between the partners, and as between them and third persons who acquired no new rights in the meantime, this is undoubtedly true. Such is the well-settled law in all cases of volunteer agencies. It is equally well settled, however, that it can not haye effect so as to defeat the rights of third persons *bona fide* acquired in the meantime. A contrary rule of law would be calculated to work manifest injustice. Take the present case for an example. Holland and Pettitt levied their attachment while the assignment remained in abeyance. It might never be confirmed by Tracy. With him alone rested the power to give it effect or to defeat it. If Holland, and Pettitt dismissed their attachment, Tracy might fail to affirm the assignment, and they would lose their lien if they persisted in their attachment proceedings. Tracy might affirm the assignment, and they would be left to pay their costs. They would thus be placed completely within Tracy's power, and their rights be made to depend on his will or caprice. Such is not the law. The assignment took effect from the date of its execution, but not so as to affect the rights acquired by the intervening attachment. The question, therefore, whether the assignment is to be regarded as taking effect from the time when it was delivered to the probate court, or from the time of its actual acceptance by the assignee, becomes immaterial. It is enough that the attachment was levied before the confirmation by Tracy.

It is also claimed that the lien of the attachment was lost by the agreement under which the property was delivered to the assignee by the sheriff. We are of opinion that the parties are estopped by their agreement from setting up any such defense. The property was given into the hands of the assignee on the faith of the agreement.

But for the agreement it would have been retained and sold by the sheriff. To allow this defense would be to aid the defendants in practicing a fraud upon the plaintiffs.

A further claim made by the defendants in error is that the proper parties were not before the court; that the creditors of the firm, as well as the assignee, should have been made parties defendant. We think otherwise. The assignee, like an executor or administrator, is an officer recognized by the law, and whose duties and qualifications are regulated by law, and he fully represents the creditors in such cases.

The judgment of the common pleas and probate courts must be reversed, and the cause remanded to the probate court for further proceedings.