(Hamilton County Court of Common Pleas.)

IN THE MATTER OF THE ASSIGNMENT OF E. E. EVANS & CO.

---

Section 3206a, R. St., would seem to have two purposes: One to give a lien to laborers and employes of any person, etc., upon real property, which will be waived unless an itemized statement be filed; the other to provide that claims due for labor shall be first paid out of the funds of the employer placed in the hands of an assignee.

Where an execution has been issued on a judgment against the employer, and a levy made on his goods, such goods, in the possession of the officer at the time of an assignment by the judgment debtor, are not placed in the hands of the assignee by the assignment, and the lien of the judgment creditor will remain a lien prior to the right of an employe under this section, even though the goods be sold by the assignee under a subsequent agreement between the parties, by which the goods are placed in the hands of the assignee to be sold, with a stipulation that the lien of the judgment creditor shall remain a first lien.

---

SAYLER, J.

On September 28, 1893, a suit was brought by the City Hall Bank against E. E. Evans & Co. on a promissory note before a justice of the

peace.    A judgment was recovered in favor of the Bank, on October 2, and on the same day a levy was made on the stock and machinery of the defendants.

On October 5 the defendants made an assignment to Ben B. Dale, in trust for the benefit of their creditors, and the assignee found the goods, so levied on, in charge of the constable under the execution and levy.

Thereupon an agreement was entered into by and between the City Hall Bank as creditor, Walter Lacy, constable, Ben B. Dale, assignee, and E. E. Evans & Co., reciting the judgment of the Bank, the assignment by E. E. Evans & Co., the levy and execution prior to the assignment, and that said judgment was the first lien on the stock and machinery so levied on, and agreeing as follows:

"Now, therefore, it is agreed by and between the City Hall Bank as judgment creditor for said $250, and the costs of said action before said justice of the peace, Walter Lacy, constable, holding said execution, and Ben B. Dale, assignee of said E. E. Evans & Co. and the E. E. Evans Co., that said judgment lien shall be and remain valid, and subsisting upon said stock and machinery in the hands of said Dale, as assignee, and that said Dale shall administer upon said property as provided by law, and that the fund arising from the sale of said stock and machinery shall be charged with the first and best lien in favor of said Bank in the above amount, and that said judgment and costs shall be paid promptly upon application to the court in the administration of said etate, and that by this agreement said Bank, shall not in anywise be considered as waiving or releasing any of their rights, as a judgment creditor who has obtained the first and best lien upon said property; and this agreement shall be made part of the record in case number 2473, and also in the case before said justice of the peace, and said Dale shall sell said property in accordance with this agreement instead of a constable proceeding to sell said property in execution, and enforcing the judgment from said justice of the peace, and the proceeds to stand in place of the property and be applied to payment of said judgment and costs in favor of said City Hall Bank."

Thereupon, Dale, as assignee, in the administration of his trust, sold said goods, and holds the proceeds for distribution.

I think the rights of the Bank are preserved under this agreement; and such rights as the Bank had on the property held under the levy, are transferred to the proceeds in the hands of the assignee (29 O. St., 441; 37 O. St. 660).

Operatives make claim on the fund arising from the sale of these goods by the assignee on claims due for labor performed within the period of three months prior to the time of he appointment of the assignee. They make the claim under sections 3206a and 6355, Revised Statutes.

As the suit was brought, judgment obtained and levy made by the Bank in good faith, I do not think the provisions of section 6355 apply.

Section 3206a provides a lien in favor of laborers, etc., on real estate of their employer in certain cases, and then provides as follows:    "And in all cases, when property of an employer is placed in the hands of an assignee, receiver or trustee, .claims due for labor performed within the period of three months prior to the time such assignee, receiver or trustee is appointed, shall be first paid out of the trust fund in preference to all other claims against such employer, except claims for taxes and the cost for administering the trust."

The section then proceeds to provide that the "lien herein provided" shall be deemed waived unless the laborer shall file with the county re-

corder an itemized statement, etc., which shall operate as "a lien upon the real property of the employer."

There would seem to be two purposes of the statute—one to give a lien on real property., which will be waived unless an itemized statement be filed, and the other to provide that the claims due for labor shall be first paid out of funds of the employer placed in the hands of an assignee.

While the provisions relating to the payment of claims due for labor out of the trust fund in the hands of the assignee are in the middle of the section, they seem to be distinct from the other provisions, and to be complete in themselves (see Judge Goebel's Ohio Probate Report, p. 90). I hardly think, therefore, the subsequent requirement of the section as to filing itemized statements relate to these provisions.

But was the property so held by the constable under the levy at the time of the assignment, property of E. E. Evans & Co. which, by reason of the assignment, was placed in the hands of the assignee, under this statute?

I think the solution of this question must depend on the effect of the levy of the execution. Did it deprive E. E. Evans & Co. of the title of the property so that it was not placed in the hands of the assignee within the meaning of this statute?

In Freeman on Executions, section 268, it is stated: "The lien of an execution gives the officer intrusted with its service no general nor special property in the defendant's goods, * * * But the moment that a levy is made, the rights and remedies of the officer are materially changed; or, more accurately speaking, he, from that moment, is vested with rights and entitled to remedies to which he could before urge no valid claim. He is entitled to retain such possession and control of the property as may be necessary to make it productive under the writ. The law, therefore, concedes to him, as to a bailee, a special property in the goods in his custody. It gives him all the legal remedies needed to maintain his rights, and to secure him indemnity for their invasion. If the property is taken from him, or if, being left by him in possession of another, it is taken form such possession by any one, or is converted by the custodian, the officer may sustain an action of replevin, trespass or trover, just as the owner of an absolute title could do in like circumstances. He may maintain either of these actions against the defendant as well as against a stranger to the suit. * * * The general property, subject to these purposes, remains in the defendant. He may, therefore, as before .the levy, convey the title to the property; the only difference being, that, after the levy, the title received by the vendee is liable to be divested by sale under the levy. The plaintiff, by virtue of the levy, does not acquire any title to the property seized. After the levy, he has, it is true, a lien upon the property, by means of which he is enabled to sell it, and to appropriate the proceeds to the satisfaction of his debt." And in section 269 it is stated: "The mere levy neither gives anything to the creditor, nor takes anything from the debtor. It does not divest the title. It only creates a lien on the property." And to the same effect 1 Denio, 574, 578; 3 Wall., 688, 699; 22 Barb., 522, 526.

The court, in 38 Ohio St., 612, says, on p. 614: "By a valid levy of an execution the property is, in a legal sense, 'seized in execution'—that is, rendered liable for its satisfaction.

It would seem, therefore, that a levy neither gives nor divests title; it creates a lien. And, under Lindeman v. Ingham, 36 Ohio St., 1, property held by the assignor, subject to the lien of a chattel mortgage, with condition broken, passes into the hands of the assignee, and the lien is trans-

ferred to the fund, and it is contended that, as the right of a judgment creditor under a levy is only that of a lien, the property should pass to the assignee on an assignment being made pending the levy.

But are not the rights of the judgment creditor under a levy, or of the officer making the levy and holding the property under the same, different from the rights of a mortgagee? The officer may retain such possession and control of the property as may be necessary to make it productive under the writ, and the law gives him all the legal remedies needed to maintain his rights, and he may maintain such rights against the defendant or against a stranger. Now, it would seem that this gives the officer the right to hold the property for the purpose of selling it under the execution, and the right of selling it. If he may maintain this right against the defendant as well as against a stranger, he certainly may maintain it against the assignee of the defendant.

If he does sell the property under the levy, the assignee would certainly have no right except to call on him to account for a surplus after the payment of the judgment with costs.

I do not think these relative rights would be changed by the fact that the officer, under an agreement, allows the assignee to sell. Such arrangements are made to save costs, or to obtain better prices, not to change the rights. If the funds produced by a sale by the officer should be applied to the payment of the debt, it seems to me they should be so applied if the sale is made by the assignee under such agreement.

If the creditors claim that by reason of such agreement the officer surrendered the stock and machinery to the assignee, and that by reason of such surrender they were "placed in the hands of the assignees," then the creditors are bound by the terms of the agreement; that is, that the lien of the judgment should remain a first lien.

The creditors cannot call this agreement, and the surrender under it, to their aid, and get the advantage of it, without being bound by all of its terms. The creditors would be estopped from setting up that the lien was lost. (29 Ohio St., 441, 447, 448).

If the property was placed in the hands of the assignee by the agreement, then it went inin his hands subject to the terms of the agreement.

If I am right in these conclusions, then the Bank holds a prior lien on the proceeds arising from the sale of the goods so levied on.

I have arrived at this conclusion after considerable deliberation and much doubt, and am still not entirely satisfied with it; but it seems to be the logical result of the authorities.

Schwab & Schultz and Outcalt, Granger & Hunt, for the bank.

Scott, Bonham and Oliver B. Jones, for the operatives.