## SALE OF FIRM CHATTELS.

[Hamilton County Common Pleas Court.]

THE FRANKLIN BANK V. W. C. WILLIAMS, CONSTABLE.

Decided, March 9, 1904.

*Partnership—Sale of all the Chattels of a Firm by One Member of Firm without Knowledge of Co-Partner—Does not Terminate Partnership—And is Void only in Suit by Non-Consenting Partner—Constable's Return of Service—Correctness of may be Impeached, When—Clear and Convincing Proof Necessary to Impeach.*

1. A sale of all the chattels of a firm not intended for sale in the ordinary course of business, made by one partner without the knowledge or consent of a co-partner, but in good faith to pay a debt of the firm, is void only in an action brought by the non-consenting member of the firm. A creditor can not question the validity of such a sale.

2. A valid assignment of all the property of a partnership for the benefit of creditors *ipso facto* terminates the partnership; but a sale of all the assets of the firm does not of itself bring the partnership to an end, even though made by one partner without the consent of the other.

3. The correctness of a constable's return of service, made in the case of A v. B, may be impeached by the constable's own testimony when such return is offered in evidence in the suit of a third party against A.

4. The testimony offered to impeach the return must amount to clear and convincing proof. This means more than a preponderance of the evidence, but less than proof beyond a reasonable doubt.

LITTLEFORD, J.

Sullivan sued Frank C. McCarren and William C. Dowson, partners doing business as McCarren & Dowson, in a magistrate's court, and in that action the constable made a return showing service upon both defendants at their residences. A judgment was taken against them, and Williams made a levy upon certain implements for grading purposes claimed to be the property of the firm of McCarren & Dowson. Afterwards the Franklin Bank,

claiming to own this same property by reason of a bill of sale made to the bank by McCarren without the knowledge or consent of Dowson, but made before Williams levied on the property, replevined the property out of the hands of Williams.

This replevin suit was tried before a magistrate, and came into this court on appeal, Sullivan having been substituted for Williams as defendant.

Several questions were argued at length during the trial of the case in this court, and were again presented on the motion for a new trial. It would require much space to give the views of the court upon all of these points; but the court adheres to the opinion expressed during the trial that all of the propositions of counsel for plaintiff necessary to support his case are right.

Upon some points about which the court felt considerable doubt, however, the court will give its conclusions.

One of the controlling questions in the case was: If one of the partners executed to a *bona fide* creditor of the firm a bill of sale of all the implements of the firm necessary to carry on its business, without the consent of the other partner, can another creditor of the partnership call the validity of the sale into question?

Counsel for defendant maintains that a creditor can question the validity of this sale.

Bates on Partnership, Vol. 1, Section 404, states that property owned for the continual use of a firm can not be sold by one partner without the consent of the other, and this statement is not qualified in any way by this excellent author. In addition to this authority, counsel for the defendant has cited in support of this proposition the following cases, to-wit: *Mills & Gibbs* v. *Miller & D.,* 109 Ia., 688; *Rutherford* v. *McDonnell,* 66 Ark., 448; *McNair* v. *Wilcox,* 121 Pa. St., 437; *Hewitt, Ruffner & Co.* v. *Sturdevant,* 4 B. M., 453, 462; *Drake* v. *Thyng,* 37 Ark., 228; *Holland & Petlitt* v. *Drake et al,* 29 O. St., 441; *McGrath et al* v. *Cowen et al,* 57 O. St., 385, 414; and a number of other cases from other states.

Counsel for the plaintiff does not deny the truth of this proposition, but say that the only person who can object to the sale is the non-consenting partner, and denies that a creditor may object

except in the case of an assignment made by one member of the firm without the consent of the other.

Counsel for plaintiff points out that the case of *Holland & Pettit* v. *Drake et al,* 29 Ohio State, 441, *supra,* much relied upon by the defendant, was an attempt by one partner to *assign* all the firm assets for the benefit of creditors, and denies that a creditor could have complained of the transaction in that case had it been a *sale* to pay a debt instead of a general assignment. The reason for this is, counsel says, that an assignment of all the assets for the benefit of creditors, brings the partnership to an end absolutely by operation of law, while the sale of all the assets not intended for sale merely embarrasses the firm. Its life is not terminated by such a sale; it may still make contracts and attempt to do business. In other words, a creditor may object to one partner putting an end to the concern without the consent of the other partner; but a creditor can not object to one partner paying an honest debt of the concern just because the other partner did not join in paying the debt.

In support of his contention counsel for plaintiff further claims that in all the cases of sales by one partner cited by opposing counsel, the objection to the sale was made by the non-consenting partner and not by a creditor of the firm; and after examining the cases, the court finds such to be the case. Furthermore, counsel for plaintiff calls to the attention of the court the closing paragraphs in 57 Ohio State, 385, *supra,* in which the Ohio Supreme Court appears to have expressed its view that a sale of all the assets of a firm not intended for sale in the ordinary course of business may be avoided only by the non-consenting member of the firm, and that a creditor can not question such a sale.

Finally, plaintiff's counsel cite three cases from other states which clearly substantiate his view, to the effect that only the non-consenting partner can complain of the sale. These cases are: *Ellis* v. *Allen,* 80 Ala., 515, 519; *Klemm* v. *Bishop,* 56 Ill. App., 613; *Hanchett* v. *Gardner,* 138 Ill., 571, 575.

Counsel for defendant says that the distinction made by plaintiff's counsel between the effect on a partnership of a general *assignment* and a *sale* of all the assets, is purely fanciful—that a

general assignment does not necessaritly *ipso facto* terminate a partnership, and that a sale of everything may *ipso facto* put an end to the firm.

In support of the latter proposition that a sale of all the assets may end the firm, counsel for defendant cites *Claibourne* v. *His Creditors*, 18 La., 501, where a partnership in a steamboat was held to be dissolved by the loss of the steamboat; and also, *Vanness* v. *Fisher*, 5 Lansing (N. Y.), 236, where the loss of all the firm's capital through bad investments was held to bring the firm to an end. But these were not sales; and there seems to be no text-book nor case which states that a sale of all the assets of a firm dissolves the firm. In the opinion of the court the proposition is not reasonable; for in this very case, after McCarren had paid the chief debt of the firm without his partner's consent by a sale to the Franklin Bank of every scraper, pick and shovel which the firm owned, still the partners might have started to work next morning with a couple of borrowed spades upon a contract for grading taken in the firm name, and they would have been a partnership just as much as ever, and not a new partnership either.

Now in support of the claim that a partnership may survive an assignment, the only cases cited for counsel for defendant are: 9 Montana, 88; 1 Dallas, 405. But even if it be conceded that these cases hold that an assignment does not *ipso facto* dissolve a firm, they are hidden out of sight by the avalanche of authorities in support of the contrary view: Story on Partnership, 7th Ed., Sec. 313, pp. 474-5; Mechem on Elements of Partnership, Sec. 247; Shumaker on Law of Partnership, 405, Note 4; Matthews on Partnership (Stanley Matthews, 1878), p. 43, Sec. 78, Par. 3; Lawson's Rights & Remedies, Sec. 671, pp. 1240-1243; *McGrath et al* v. *Cowen*, 57 O. S., 385, 410; Am. & Eng. Ency. Law, 2d Ed., Vol. 22, p. 202, Note 5; *Wells* v. *Ellis*, 68 Cala., 243; *Simons* v. *Curles*, 41 Maine, 373.

In conclusion upon this branch of the case, the court is of the opinion that the reasoning of counsel for the plaintiff is sound, and that a sale such as this was may be objected to by the non-consenting partner, but that a creditor can not object.

In addition to the validity of the bill of sale to the bank, another

question which was very fully discussed by counsel on both sides during the trial of the case, but which does not cut much figure on the motion for a new trial, related to plaintiff's right to impeach the return of Constable Williams. Could the correctness of Constable Williams' return of proper service on both McCarren and Dowson, which Williams made in the suit of *Sullivan* v. *McCarren & Dowson* in the justice's court, be impeached by Williams himself in this case of the Franklin Bank against Williams (or Sullivan)? Williams having been called by the defendant here to establish certain facts, counsel for the bank sought to prove by cross-examination of Williams himself that he did not in fact serve both Frank C. McCarren and William C. Dowson in the suit which Sullivan brought against them before the justice, although Williams returned service on both at residence. Defendant's counsel maintains that Williams should not have been allowed to give testimony tending to impeach his return as shown by the transcript; citing *Bogen* v. *Stoutenburgh,* 7 Ohio, Part 2, 133; *Hentz* v. *Ward et al,* 1 Cinti. Supr. Court, 387; *Root* v. *Railroad Company,* 45 O. S., 223-228; and cases from other states.

On the other hand, counsel for the plaintiff cited the following: *Phillips* v. *Elwell et al,* 14 O. S., 240; *Kingsborough* v. *Tousley et al,* 56 O. S., 450; *Root* v. *Railroad Company,* 45 O. S., 223, 230; together with cases from other states.

On the authority of the 14th Ohio State, 240, *supra,* and without going into a discussion of the cases, the court is of the opinion that the constable has the right in this case of the *Bank* v. *Williams* to testify that he did not make a proper service in the case of Sullivan against McCarren & Dowson, notwithstanding the fact that from the transcript of the magistrate's proceedings in that case it appears that his return showed proper service.

The court does not think such testimony should be submitted to the jury, however, unless it is of a sort which would satisfy the mind much more than a preponderance of the evidence could possibly do, and then it should be given to the jury with the instruction that unless it clearly and convincingly proves the incorrectness of the return, it must be disregarded, and the return should stand. It has been decided by our Supreme Court that to vary the meaning of a

business contract requires "clear and convincing proof": *Olinger* v. *McGuffey,* 36 Bulletin, 305. To contradict a notarial acknowledgment the proof must be "clear and convincing": *Faegles* v. *Tanner et al,* 20 C. C., 86. There are other decisions to the same effect in this state.

In *Ashley* v. *Hennahan,* 56 O. S., 559, the Supreme Court has gone so far as to say that proof of an oral waiver of a written stipulation in a building contract must be so "clear and convincing" as to "leave no reasonable doubt about it." These last words were used inadvertently by the learned judge writing the opinion, I venture to say; and the meaning of "clear and convincing proof" is doubtless accurately expressed in *Faegles* v. *Tanner, supra,* where the court defines it as more than a "preponderance," but less than "beyond a reasonable doubt."

The interrogatories asked for by the defendant in this case were refused because the request to submit them to the jury was not coupled with the condition that they be answered in case of a general verdict (15 C. C., 355, since affirmed); and the charges are correct if the court's theory of the case is correct.

The motion for a new trial is overruled.

*Simeon M. Johnson,* for plaintiff.

*Louis J. Dolle* and *Constant Southworth,* for defendant.