MCKEAG, *Trustee,* v. COLLINS *et al., Trustees, Appellants.*

**Deed, Authority of President of Bank to Make.** Under the evidence in this case held that the president of a bank had no authority to execute the bank's deed, conveying land for the benefit of creditors, and also that the authority of the president to make the deed in question could not be sustained on the ground of the bank's acquiescence therein.

McKeag v. Collins.

♠

*Appeal from Lewis Circuit Court.*—HON. B. E. TURNER, Judge.

AFFIRMED.

*John M. Dickson* and *H. I. D'Arcy* for appellants.

(1) Every corporate act requiring express authority from the board of directors of the bank from the date of its organization up to 1880, having been executed by Chambers, president of the bank, without that express authority, there is a plain ratification by the bank and its stockholders and directors of all the acts, including the deed in question, or an estoppel against the denial of ratification. Pollock on Cont. (Ed. Wald.) 516; *Carroll v. Med. Savgs. Bk.*, 3 Mo. App. 250; *Johnson v: Douglas*, 73 Mo. 168–71; Pollock on Con. (Ed. Wald.) 42; *Chouteau v. Allen*, 70 Mo. 326; *Gordon v. Watts*, 1 Watts, 383; *Eppright v. Nickerson*, 78 Mo. 482; Thompson's Stockholders, sec. 168; *Martin v. Webb*, 18 C. L. J. 89–92; *Hannibal & St. Joe Ry. Co. v. Marion Co.*, 36 Mo. 306; *Peck v. Ritchey*, 66 Mo. 114; *First Nat. Bk. v. Fricke*, 75 Mo. 183. (2) If the principles of estoppel and ratification do not apply, yet the deed was at most voidable, not void, and until the party purporting to make it takes steps to avoid it, it stands as a valid deed. *St. Louis Pub. Schools v. Risley*, 28 Mo. 419; Pollock on Contracts (Ed. Wald.) 42; *Graham v. Railroad*, 102 N. Y. 148–86; Story Eq. Jur., sec. 1040, and cases cited; *Bradley v. Ranney*, 69 Mo. 282; *Welch v. Welch*, 63 Mo. 61; *Ashurst's Appeal*, 60 Pa. St. 291, and others referred to in argument. Using the words "The Butchers' & Drovers' Bank" instead of "The Butchers' and Drovers' Bank of St. Louis" in the deed does not constitute a misnomer. *Bank of Commerce v. Mudd*, 32 Mo. 218; 2 Wash. on R. P. 236; *Brown v. Bank*, 6 Hill, 443; *Middleton v. Findla*, 25 Cal. 76;

(3) The trustee having accepted the trust, was charged with its duties and responsibilities and could not afterwards disclaim them. 1 Perry on Trusts, sec. 268, p. 349. (4) The filing of the suit by the bank to set aside the sale of McKeag, under execution, was not a disaffirmance of the deed. *Gilkeson v. Knight*, 71 Mo 406.

*George Ellison* for respondent.

(1) A sale under execution transferred the possession or the right of possession to the plaintiff as purchaser. *Page v. Hill*, 11 Mo. 149; *Matney v. Graham*, 59 Mo. 190; *Boyd v. Jones*, 49 Mo. 202. (2) A sale under execution in lump of several tracts of lands or of many lots together does not make the sale a nullity. *Philips v. Stewart*, 59 Mo. 491; *Lisa v. Lindell*, 21 Mo. 127; *Wellshear v. Kelly*, 69 Mo. 344; *Harris v. Vineyard*, 42 Mo. 568; *Chase v. Williams*, 74 Mo. 434. Besides, neither Cummings nor the bank are parties to this action and hence their rights cannot be tried. *Call v. Chase*, 21 Wis. 511. (3) The "Butchers' & Drovers' Bank" and "The Butchers' & Drovers' Bank of St. Louis" are not the same in name or substance. *Bank v. Mudd*, 32 Mo. 218; *Glass v. Lipton*, etc., 32 Ind. 377; *King v. Randelett*, 33 Cal. 320. (4) Chambers had no authority to make the deed to defendant and it passed no title. *Bank v. Dandridge*, 12 Wheat. 64; *Flickner v. President*, etc., 8 Wheat. 338; *People v. Judge*, etc., 31 Mich. 456; *Walworth*, etc., *v. Trust Co.*, 14 Wis. 325; *Merritt v. Lambert*, 1 Hoff. Ch. 166; *Head v. Providence Ins. Co.*, 2 Cranch, 127. (5) So far as is shown by the evidence in this case, no ratification of this conveyance by the bank was made; on the contrary its repudiation is shown by its attorney directing the sale in bulk of the same lands; by the motion of the bank to set aside the sheriff's sale, and by its petition now pending in this court to set aside the sale to plain-

tiff. by the sheriff. By these acts the bank has repudiated the act of Chambers in making the conveyance. *Dowzelot v. Rawlings*, 58 Mo. 75; *Turner v. Baker et al.*, 64 Mo. 218.

HENRY, C. J.—This is an action of ejectment, instituted in the Lewis circuit court, to recover the possession of lands described in the petition. The suit was originally against Collins, who was in possession of the lands, but on his own motion Dickson was made a defendant, claiming the land under a deed of trust from the Butchers' and Drovers' Bank of the city of St. Louis. Plaintiff claims under a sheriff's deed. The answer of defendant is a general denial, Dickson also pleading a special defence, alleging that the sale by the sheriff to plaintiff was of several tracts in gross, whereby the property was sacrificed, and other matters which will be sufficiently disclosed in this opinion. On a trial plaintiff had a judgment, from which defendant, Dickson, has appealed.

Some time in July, 1879, the Butchers' and Drovers' Bank of St. Louis became insolvent, its liabilities amounting to about $700,000. Jno. K. Cummings was a creditor of the bank to the amount of about $12,000. B. M. Chambers, the president of said bank, called the creditors together and proposed to give them the bank's certificates of indebtedness for the debts due them respectively, payable three years after their date. That proposition was in writing, and is as follows:

"PROPOSITION SUBMITTED TO DEPOSITORS.

"The liabilities of the bank are as follows:
Due depositors on time.............$451,613.64
Due depositors on demand.......... 231,868.25
Other claims...................... 2,854.98

Total..............................$686,336.87

"If the proposition now made is accepted by the depositors the bank will pay to the depositors so accepting five per cent. in cash and will deliver to each depositor for the balance the bank certificates of scrip in sums of five, ten, and one hundred dollars, the paper to be in form somewhat as follows:

"'This is to certify that the Butchers' and Drovers' Bank of St. Louis is indebted to the bearer in the sum of —— dollars, payable on or before August 1, 1880. This certificate has the security of the assets of said bank, amounting to $750,000, and is further secured by property conveyed to trustee for securing its payment by E. B. Hudson, M. F. Smith and M. C. Chambers, of the value of $250,000, and is receivable for all debts due the Butchers' and Drovers' Bank, issue limited to $650,000.

"'(Signed)     B. M. CHAMBERS, President.

"'JULES DESLOGE, Teller.'

"If the proposition be accepted the persons named in the certificate will convey to the trustee property which is estimated at fair valuation to be worth $250,000, to secure the payment of these certificates.

"These certificates will be receivable for any indebtedness due the bank and in payment of any property owned by the bank. The property of the bank will be sold and the debts due collected at as early a day as practicable; a quarterly statement will be made to a committee of depositors so accepting.

"(Signed)     B. MAZIERE CHAMBERS,

"President."

This proposition was accepted by the creditors, and Cummings received his certificate. In December, 1880, after his certificate became due, he sued the said bank, obtained a judgment, had the land in controversy sold under an execution issued on that judgment, and defendant, McKeag, purchased it and received the sheriff's deed therefor as trustee for Miss Annie M. Cummings, daughter of Jno. K. Cummings. Prior to the rendition

of that judgment, in August, 1880, Chambers, in the name of the Butchers' and Drovers' Bank, made a conveyance of the land in controversy and other real estate belonging to the bank to defendant, Dickson, in trust for its creditors, which was recorded in the office of recorder of deeds for Lewis county on the twenty-sixth day of August, 1880. The deed was properly executed as that of the bank, if the president was authorized to make it. The plaintiff contends that it was executed by Chambers without any authority from the directors. Defendants concede that there was no express authority given in this particular instance, but contends that the acquiescence of the directors and stockholders, and the general authority assumed by Chambers to execute corporate acts without express authority, as in the instance of the issuance of the certificates of indebtedness, without the assent of the directors, amount to a ratification of such acts and estops the bank from denying their validity.

The testimony in relation to the course of business in that bank and the extent to which it was entrusted to the president is as follows, in substance: That the bank directors seldom met, took but little interest in the business, left the management to Chambers, who seems to have acted as if the institution was his. He testified, however, that this was the first deed he had ever executed, without express authority from the bank. There is no evidence that prior to the execution of the deed in question he had ever executed any other, with or without the authority of the bank. It is manifest from the evidence that Chambers had no authority to execute this deed, and the only reliance of defendants is upon the alleged acquiescence of the bank, while the truth is that on March 14, 1881, a motion was filed by the bank, or in the name of the bank, in the St. Louis circuit court to set aside the sale under which defendant claims, in which it was alleged, among other averments, that Chambers had no authority to execute said deed to

Dickson. Cummings' judgment was rendered in December, 1880, about six months after the deed in question was executed by Chambers. That suit was pending when the deed was executed. This suit in ejectment was commenced on the twenty-third of June, 1881, and the trial occurred in March, 1883. When Cummings obtained his judgment in 1880 there were no grounds for the position that the bank had, by acquiescence, ratified the deed executed by Chambers, and certainly a ratification which occured after he acquired a lien upon the land, and after this plaintiff purchased the land under that judgment, cannot avail against his title.

We fail to find in the testimony any evidence which tends to convict Cummings of bad faith in his transactions. He waited patiently three years, until his certficate of indebtedness became due, and after other holders of such certificates had received the full amounts due thereon respectively. Before he instituted his suit and when Chambers learned that Cummings had sued, in hot haste, without consulting the directors or stockholders of the bank, he executed the deed in question on purpose to defeat Cummings in the collection of his demand. This is a fair inference from his own testimony. Neither the doctrine of ratification nor estoppel had any application to this case. There are no facts upon which to invoke it. There is not a particle of testimony showing that, at the time Cummings obtained his judgment, the bank had done any act amounting to a ratification, and certainly a sufficient length of time had not intervened to warrant a presumption of acquiescence. The answer set up no equitable defence to the action. The cause was tried by the court without the intervention of a jury. No declarations of law were asked or given, and, in the motion for a new trial, the only grounds alleged were: That the judgment was against the law, against the evidence, against the law and the evidence, against the weight of evidence, and, on the evidence, should have been for defendants. No rulings of the

court as to the admission or rejection of testimony were complained of, and we might have disposed of the case in a very summary manner, but have gone through the record and discovered no good reason for disturbing the finding or judgment of the court, which is, therefore, affirmed. All concur.