THE STATE NATIONAL BANK OF ST. JOSEPH

*v.*

THE UNION NATIONAL BANK OF CHICAGO.

*Opinion filed November 1, 1897.*

1. CORPORATIONS—*mere insolvency does not prevent corporation from preferring creditors.* Mere insolvency of a corporation does not deprive it of power to dispose of corporate property in good faith by way of paying or securing corporate indebtedness, even though the result may be to give one creditor a preference over another.

2. SAME—*section 20 of Corporation act may be availed of by creditors.* The provisions of section 20 of the act on corporations, (Rev. Stat. 1874, p. 289,) concerning the invalidity of directors' action taken at a meeting held outside the State, are not intended for the benefit and protection of stockholders alone, but may be taken advantage of by creditors of the corporation.

3. SAME—*mortgages—invalidity of mortgage authorized at meeting held outside the State.* A mortgage executed by the president of an Illinois corporation upon corporate property in Illinois is invalid when executed in pursuance of a resolution of the directors at a meet-

ing held outside the State, not authorized by a two-thirds vote of the directors, as required by section 20 of the act on corporations.

4. SAME—*effect where mortgage would have been valid without directors' sanction.* The invalidity of a mortgage authorized by a resolution passed at a meeting of directors held outside the State is not cured by the fact that the mortgage might have been valid if it had been executed by the president under his general powers, where it appears that the president, in executing the mortgage, acted in pursuance of the resolution, and not on his own authority.

5. RATIFICATION—*liens attaching before ratification are not divested thereby.* A lien acquired upon corporate property by the levy of an attachment after the execution of a mortgage thereon by the corporation, which was invalid because authorized at a directors' meeting held outside the State, is not divested by the subsequent ratification or confirmation of the mortgage by the directors after the levy of the attachment.

6. ATTACHMENT—*defendant's consent to entry of judgment does not divest attachment lien.* The withdrawal by an attachment defendant of his plea traversing the allegations of the affidavit for attachment, and his consenting to judgment, do not, in the absence of fraud, divest the lien acquired by the levy of the attachment.

*State Nat. Bank* v. *Union Nat. Bank,* 68 Ill. App. 25, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

This was a bill to foreclose a mortgage, brought by the State National Bank of St. Joseph, Mo., on real estate in Chicago owned by the John Moran Packing Company, mortgagor, a corporation organized under the laws of this State and doing business at St. Joseph, Mo. The Union National Bank of Chicago and the Atlas National Bank of Chicago, attaching creditors, were joined as defendants to the bill. The Union National Bank and the Atlas National Bank, the former by answer and cross-bill and the latter by answer, set up that the mortgage was invalid because authorized at a meeting of the directors held outside of the State. The banks also set up that the John Moran Packing Company was at the time insolvent; and that the giving of the mortgage under the

circumstances operated as an unlawful preference, which should not be enforced against the later attachment liens.

Prior to October 20, 1894, John Moran was the owner of a packing plant situated in St. Joseph, Mo., which he was then operating, and was also the owner of an equity of redemption in real estate located in Chicago, being the premises in question in this suit. Upon these premises was a trust deed dated March 12, 1892, to William H. Matthews, trustee, securing an unpaid balance of over $15,000. In carrying on his packing business Moran was borrowing, from time to time, large sums of money from the State National Bank of St. Joseph, Mo., the complainant. In October, 1894, the John Moran Packing Company was incorporated under the laws of the State of Illinois, with a capital stock of $150,000, the number of shares being 1500 and the par value of each share $100. John Moran became, and still is, president of the John Moran Packing Company, and C. W. Taylor was elected secretary. Soon after the complete organization of the John Moran Packing Company, John Moran sold and transferred to it his packing plant in St. Joseph, together with his entire business there, his bills and accounts receivable, good will, etc., and also his equity in his above described mortgaged premises situated in Chicago, for the nominal sum of $150,000, and the packing company assumed all his liabilities growing out of the said packing business, including the aforesaid advances made to him by complainant. In payment John Moran received 1139 shares of stock in the John Moran Packing Company at a valuation of $113,900, and due bills or orders of the company for the remaining $36,100. So far as it appears he continued to own that number of shares at all times since he so acquired them.

Among the liabilities so assumed by the John Moran Packing Company was an indebtedness to complainant of $50,000, for moneys advanced to Moran, as before stated, which became due in November, 1894. On November 8,

1894, two new notes, for $25,000 each, payable in three and four months, respectively, from date, were executed by the John Moran Packing Company to the order of complainant, to take up the said indebtedness. These two notes of $25,000 each were endorsed by John Moran, and are the notes secured by complainant's mortgage sought to be foreclosed by complainant's bill. The mortgage in question was not executed until in February following. About the middle of February, 1895, one of the $25,000 notes being past due and unpaid, the complainant demanded security from the company. At this time the company owed in the neighborhood of $160,000. A meeting of the board of directors of the John Moran Packing Company was, after notice to each director, held at St. Joseph, Mo., on the 18th day of February, 1895. Three of the five members of the board of directors, namely, John Moran, C. W. Taylor and P. Fogarty, were present at the meeting and voted in favor of the following resolution:

"*Resolved,* That the president and secretary be and they are hereby instructed to execute deeds in the nature of mortgages upon all the property of the company situated in this State and in Illinois, for the purpose of securing the payment of two notes made by this company to the State National Bank on the 8th day of November, 1894, for $25,000 each, and also for the purpose of securing and carrying out the contract with the St. Joseph Stock Yards and Terminal Company made by John Moran on the 25th day of June, 1894, assumed by this company."

The resolution then sets out *in hœc verba* certain deeds and mortgages which it will not be necessary to set out here. The president and secretary, under the corporate seal, thereupon executed the mortgage in controversy, dated February 18, 1895, securing the two promissory notes for $25,000 each. The mortgage was acknowledged on the same day, and recorded in the recorder's office in Cook county on February 19, 1895, at 9:55 A. M. At the same time the mortgage was executed to complainant the president and secretary executed the other mortgages mentioned in the resolution, and they were placed on

record at the same time complainant's mortgage was recorded. On the same day that the mortgages to complainant and the mortgages to the terminal company were recorded in Cook county, i. e., on February 19, 1895, but several hours thereafter, the defendant, the Union National Bank of Chicago, began an attachment suit in the Superior Court of Cook county against the John Moran Packing Company, upon the ground, as stated in the affidavit for attachment, that the company had, within two years last past, fraudulently conveyed or assigned its property, etc., and was about fraudulently to conceal, assign or otherwise dispose of its property.

On March 25, 1895, a meeting of the board of directors of the John Moran Packing Company was, after notice to all of the directors, held at the general office of the company in Chicago. At this meeting of the board of directors there were present four members of the board. A resolution ratifying and approving the acts and resolutions adopted at the meeting held on February 18, 1895, and directing the president and secretary to execute new deeds upon the same trusts and for the same purposes as the deeds ordered and executed on February 18, 1895, by way of further assurance, was carried by an affirmative vote of three directors. Acting under this resolution, the John Moran Packing Company, by its president and secretary, and under its corporate seal, executed the mortgage to complainant dated March 25, 1895, securing the same notes described in complainant's mortgage dated February 18, 1895, which mortgage was duly acknowledged, received and accepted by complainant without waiving or relinquishing the mortgage first mentioned or the lien created thereby, and was recorded in Cook county, Illinois, on March 26, 1895. This mortgage was also set forth in complainant's bill and is sought to be foreclosed thereby.

It does not appear that the John Moran Packing Company, or any of its officers, directors or stockholders, ever

questioned the validity of the mortgages in question. The attachment suit of the Atlas National Bank was not commenced until April 26, 1895, after the execution and delivery of the mortgage in ratification of the mortgage of February 18, 1895.

On the hearing the court found that the complainant's mortgage of February 18, 1895, although prior to the attachment of the Union National Bank and the Atlas National Bank, was not executed according to law, and was therefore illegal and void as against attaching creditors, and should, as against them, be set aside; that the mortgage to complainant executed March 25, 1895, was subsequent to the attachment of the Union National Bank and inferior thereto, and as to the Atlas National Bank it was illegal and void because not authorized by the board of directors of the packing company. The State National Bank appealed to the Appellate Court, where the decree was affirmed as to the Union National Bank but reversed as to the Atlas National Bank. To reverse the judgment of the Appellate Court the State National Bank appealed.

PADDOCK, WRIGHT & BILLINGS, (BROWN & PLATT, of counsel,) for appellant:

Section 20 of the act on corporations, providing that the action of any meeting of a board of directors of an Illinois corporation held outside the State shall be void unless such meeting is authorized or its acts ratified by a vote of two-thirds of the directors at a regular meeting, was enacted for the protection of stockholders exclusively, and is a matter in which the creditors and the public generally have no interest. *Thomas* v. *Railway Co.* 104 Ill. 462; *Hardware Co.* v. *Phalen,* 128 Pa. St. 111; *Hardware Co.* v. *Roland,* id. 119; *Gordon* v. *Preston,* 1 Watts, 385; *Wheelwright* v. *Railway Co.* 56 Fed. Rep. 164; *Beecher* v. *Marquette,* 45 Mich. 103; *Jones* v. *Guaranty Co.* 101 U. S. 622; *Hervey* v. *Railway Co.* 28 Fed. Rep. 169; *Campbell* v. *Mining Co.* 51 id. 1;

*Eureka Iron Works* v. *Bresnahan,* 60 Mich. 332; *Fidelity Co.*
v. *Railroad Co.* 32 W. Va. 245; Morawetz on Corporations,
sec. 675.

The mortgage in question would have been valid had
no meeting of directors been held.   *Reichwald* v. *Hotel Co.*
106 Ill. 439; *Railway Co.* v. *Bridge Co.* 131 U. S. 371; *Wood* v.
*Whelan,* 93 Ill. 153; *Indianapolis R. M. Co.* v. *Railway Co.* 120
U. S. 256; *Darst* v. *Gale,* 83 Ill. 136; *Glover* v. *Lee,* 140 id. 102.

A corporation and its stockholders having received
the benefits of a mortgage executed by the officers of the
company and acquiesced in the act, are estopped to plead
*ultra vires* or want of power, or to take advantage of the
defective execution of the power of the corporation or its
board of directors; and parties claiming through the cor-
poration have no greater rights than has the corpora-
tion.   *Agricultural Society* v. *Paddock,* 80 Ill. 263; *Plank Road
Co.* v. *Murray,* 15 id. 336; *Thomas* v. *Railway Co.* 104 id. 462;
*Bradley* v. *Ballard,* 55 id. 413; *Hardware Co.* v. *Phalen,* 128 Pa.
St. 110; *Hardware Co.* v. *Roland,* id. 119; *Campbell* v. *Mining
Co.* 51 Fed. Rep. 1; *Mining Co.* v. *Bank,* 96 U. S. 640; *Bank*
v. *Matthews,* 98 id. 621; *Ragland* v. *McFall,* 137 Ill. 81.

Any departure by an attaching creditor from the pre-
scribed mode of procedure for establishing his right, op-
erates to discharge the lien of his attachment.   *Murray*
v. *Eldridge,* 2 Vt. 388; Drake on Attachment, sec. 262; *Hall*
v. *Walbridge,* 2 Aiken, 215.

GREEN, ROBBINS & HONORE, for appellee:

In order that the acts of officers or agents may bind a
corporation when not expressly authorized, the act must
be such as is in the line of their duty or agency.   *Winsor*
v. *Bank,* 18 Mo. App. 665.

The president, general agent or manager of a corpo-
ration cannot, by virtue of his office merely, assign the
assets of the corporation.   He must have some warrant
from the charter, the directory, or the custom or usage
of the corporation.   *Hyde* v. *Larkin,* 35 Mo. App. 366.

Ratification does not operate to divest the rights of purchasers and lienholders acquired in good faith after the execution of the unauthorized instrument, and before the ratification. *Holland* v. *Drake,* 29 Ohio St. 441; *Fulton* v. *Darling,* 66 Wis. 155; *Stein* v. *LaDow,* 13 Minn. 412.

Ratification cannot have effect so as to defeat the rights of third persons *bona fide* acquired in the meantime. *Holland* v. *Drake,* 29 Ohio St. 441.

·The language of the statute is explicit: "The action of any meeting held beyond the limits of this State shall be void unless such meeting was authorized or its acts ratified by a vote of two-thirds of the directors, * * * at a regular meeting." Rev. Stat. chap. 32, sec. 20.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It is true that the John Moran Packing Company, when the mortgage was executed to complainant, was largely indebted and may have been insolvent; but complainant was a *bona fide* creditor, and it had the right to obtain security, and the corporation had the undoubted right to secure one creditor in preference to another, if it saw proper to do so. In this State the law is well settled that mere insolvency of a corporation does not deprive it of the power to dispose of corporate property in good faith, by way of paying or securing corporate indebtedness, although the result may be to give one creditor a preference over others. (*Warren* v. *National Bank of Columbus,* 149 Ill. 9; *Gottlieb* v. *Miller,* 154 id. 44; *Blair* v. *Illinois Steel Co.* 159 id. 350.) The mortgage in question can not, therefore, be defeated on the ground that the mortgagor may have been insolvent when it was executed.

Section 20, chapter 32, of the Revised Statutes, provides: "The by-laws of every corporation shall provide for the calling of meetings of the directors, trustees, or other officers corresponding to trustees; and when all such officers shall be present at any meeting, however called or notified, or shall sign a written consent thereto

on the record of such meeting, the acts of such meeting shall be as valid as if legally called and notified: *Provided*, that the action of any meeting held beyond the limits of this State shall be void unless such meeting was authorized or its acts ratified by a vote of two-thirds of the directors, trustees, or officers corresponding to trustees, at a regular meeting."

The meeting at which the resolution was adopted authorizing the execution of the mortgage to complainant was held in the State of Missouri. The holding of the meeting beyond the limits of this State was not authorized by a vote of two-thirds of the directors of the corporation; nor was the action of the meeting held in Missouri, at which the resolution authorizing the execution of the mortgage was adopted, ever ratified by a vote of two-thirds of the directors. Under the reading of the statute the mortgage could not be regarded as a valid instrument on the day it was recorded and on the day the Union National Bank of Chicago sued out an attachment and levied on the Chicago property. Unless, therefore, the mortgage is not controlled by the statute referred to, and can be aided and sustained by some other principle, it is apparent that it cannot prevail over the lien acquired by the Union National Bank under and by virtue of the levy under the attachment. It is, however, contended in the argument, that as the mortgage was executed in due form by the president and secretary of the corporation, and duly acknowledged and recorded before the property was attached by the bank, it must be regarded as a valid instrument, even if the meeting of the directors of the Moran Packing Company on February 18, 1895, had never been held.

The rule seems to be well established in this State that the ordinary affairs of a corporation, such as custom has imposed upon or necessity requires of the president of a corporation, may be performed by him without express authority. (*Chicago, Burlington and Quincy Rail-*

*road Co.* v. *Coleman,* 18 Ill. 297; *Mitchell* v. *Deeds,* 49 id. 416; *Smith* v. *Smith,* 62 id. 493.) Under this rule the president of the corporation no doubt had the power to collect debts due the corporation, make all contracts necessary in the transaction of its business, and, under his general powers as president, he might secure a debt due from the corporation by a mortgage on some of its property. But it is manifest from the record that the mortgage in question was not executed by the president of the corporation by virtue of or under his general powers as president. The resolution of February 18, 1895, "*instructed* the president and secretary to execute the deeds," and in the resolution of the directors' meeting of March 25, 1895, it is recited that said deeds were afterwards executed by this company *pursuant to said* resolution. Whether the mortgage might be sustained had it been executed by this president of the corporation under the general powers conferred upon him by law is a question that does not arise here, as it was executed pursuant to the resolution adopted by the board.

But it is said the mortgage was ratified, and hence became valid. As has been seen, the Union National Bank sued out an attachment and levied on the property February 19, 1895. At this date the mortgage held by complainant was invalid, and the bank acquired a lien on the property as it was then situated. When, therefore, the directors of the corporation met on March 25, 1895, and by resolution confirmed the mortgage previously made or authorized a new one, this action could only be taken subject to the lien which, in the meantime, the bank had acquired on the property.

*McKeag* v. *Collins,* 87 Mo. 164, is a case in point. There a question arose between the grantee in a deed and a purchaser under a judgment. The deed, although invalid originally, it was claimed had been ratified. In passing upon the question presented the court said: "It is manifest from the evidence that Chambers had no authority to

execute this deed, and the only reliance of defendants is upon the alleged acquiescence of the bank.  *  *  *  Cummings' judgment was rendered in December, 1880,—about six months after the deed in question was executed by Chambers.  *  *  *  When Cummings obtained his judgment, in 1880, there were no grounds for the position that the bank had, by acquiescence, ratified the deed executed by Chambers, and certainly a ratification which occurred *after* he acquired a lien upon the land, and after this plaintiff purchased the land under that judgment, cannot avail against his title.  *  *  *  Neither the doctrine of ratification nor estoppel has any application to this case. There are no facts upon which to invoke it.  There is not a particle of testimony showing that at the time Cummings obtained his judgment the bank had obtained any act amounting to a ratification, and certainly a sufficient length of time had not intervened to warrant a presumption of acquiescence."  The same principle has been declared in *Trumbull* v. *Union Trust Co.* 33 Ill. App. 319, and the same doctrine has been announced in *Holland* v. *Drake*, 29 Ohio St. 441, *Fulton* v. *Darling*, 66 Wis. 155, and *Stein* v. *LaDow*, 13 Minn. 412.

It is true that neither stockholders nor directors of the corporation, so far as appears, ever objected to or called in question the mortgage.  It is also true that the act of a president and secretary of a corporation in executing mortgages for the corporation may be ratified by acquiescence of the stockholders and directors of the company. But the Union National Bank sued out its attachment and levied on the property the next day after the mortgage was executed.  There was therefore no acquiescence in behalf of any person whatever before the validity of the mortgage was challenged and the property levied upon by the bank.  On March 25, 1895, a meeting of the board of directors of the company was, after notice to all of the directors, held at the general office of the company in Chicago, Illinois.  At this meeting of the board of di-

rectors there were present four members of the board, namely, John Moran, C. W. Taylor, P. Fogarty and W. T. Nash. A resolution ratifying and approving the acts and resolutions adopted at the meeting held on February 18, 1895, and directing the president and secretary to execute new deeds upon the same trusts and for the same purposes as the deeds ordered and executed on February 18, 1895, by way of further assurance, was adopted by an affirmative vote of three directors, namely, Moran, Taylor and Fogarty. Nash voted against the resolution. Acting under this resolution, the company, by its president and secretary and under its corporate seal, executed the mortgage to complainant dated March 25, 1895, securing the same notes described in the mortgage of date February 18, 1895. This mortgage was duly acknowledged and accepted by complainant and placed on record March 26, 1895. This action of the board could not be regarded as a ratification of the mortgage executed on February 18, because not passed or adopted by a vote of two-thirds of the directors, as required by the charter. This action of the board authorizing the making of a new mortgage conferred undoubted power on the president and secretary to make a new mortgage which would be valid from the time executed, or it might be treated as a confirmation of the mortgage executed on February 18, subject to the rights of third parties acquired in the property before this action was taken. While the action taken on March 25, 1895, may be regarded as binding and conclusive on the directors of the corporation and its stockholders, yet we regard the law as well settled that in so far as third parties may have acquired rights in the mortgaged property, the action of the board cannot become effectual so as to defeat rights of third parties *bona fide* acquired before such action was had.

But it is contended that the statute providing that the action of the directors of a corporation beyond the limits of the State is invalid, was enacted for the benefit

of stockholders, and that creditors cannot take advantage of it. Section 20 of the act, prohibiting meetings outside of the State, does not allude to stockholders, nor is there anything appearing in the section or chapter of the act to indicate that it was passed exclusively for stockholders. It is one of a number of sections relating to corporations, and if it had been intended that the section should have a limited or qualified meaning, it is strange nothing is found in the act indicating such intention. Moreover, in other States where similar statutes have been passed, creditors have been allowed to avail of the provisions of such statutes. (*Hoyt* v. *Thompson*, 5 N. Y. 320; *McKeag* v. *Collins*, *supra; Bank* v. *Asheville Lumber Co.* 116 N. C. 827; *State Nat. Bank* v. *Vigo Bank*, 141 Ind. 352.) Here the contest is between two creditors, the complainant claiming a prior lien under a mortgage, while the defendant is claiming a prior lien under proceedings by attachment. The stockholders and directors of the company are indifferent. They have no direct interest in the controversy between the two contestants, and if they, and they alone, can claim the benefit of the statute, in this case and in many others that might arise the statute would be a nullity. We think creditors as well as stockholders may avail of the provisions of the statute.

In the affidavit for the attachment it was alleged that the company had, within two years last past, fraudulently conveyed or assigned its property so as to hinder and delay its creditors, etc. The packing company, the defendant, filed a plea traversing the grounds of attachment set up in the affidavit. After the case had stood in this condition for some months, by agreement of the parties, on December 14, 1895, the plea in abatement was withdrawn and judgment was rendered for the amount claimed by the bank, and it is claimed that this action on behalf of the parties released the lien of the attachment. We do not concur in that view. Where the plaintiff in the attachment sustains the grounds upon which the at-

tachment issued and prosecutes his case to final judgment, the lien of the judgment relates back to the levy of the writ of attachment. Here the defendant in the attachment abandoned its defense, withdrew its plea and suffered a judgment to be entered. This it had the right to do, and a judgment entered for the plaintiff in the attachment under such circumstances has the same validity as it would have if there had been a trial of the issue presented and the plaintiff had recovered. A similar question arose in *Adler* v. *Anderson,* 42 Mo. App. 189, and it was there held that an agreement made by the attachment defendant, after the attachment, to withdraw his plea in abatement and let judgment be rendered in favor of the plaintiff, does not, in the absence of fraud in fact, destroy the lien of the attachment.

The appellant has, however, cited *Murry* v. *Eldridge,* 2 Vt. 388, and *Hall* v. *Walbridge,* 2 Aiken, 215. We do not think these cases sustain the position of counsel. In the first case cited two attachments were sued out before a justice of the peace. Before the return day of the first attachment the debtor came before the justice and consented to an immediate trial. The trial was had and judgment entered against the debtor. The second attachment was regularly prosecuted to judgment, and the court held that the lien of the first attachment was lost by obtaining a judgment before the return day; that the trial before the return day was not a trial in the action of attachment. In the other case cited the attachment lien was lost for the reason no judgment was rendered in the attachment suits, but, on the other hand, judgment was confessed before the return day of the attachment. The cases are so different from the case under consideration that they cannot control.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*