# JOSEPHINE HOSPITAL CORPORATION, Appellant, v. MODOC REALTY COMPANY et al.

### Division Two, March 19, 1925.

1. **CHARITABLE DEVISE: Power to Sell.** The trustees of an incorporated hospital to which has been devised real estate by a will authorizing them to sell, have power, where its charter does not forbid a sale, to sell it.

2. ————: ————: **Application of Proceeds.** The fact that the will authorizing the trustees of a hospital to sell devised real estate provided that the proceeds of any sale should be re-invested and that only the net income be used for hospital purposes, cast no burden on the purchaser to see that the proceeds were properly applied by the hospital.

3. **CORPORATION: Power of President to Sell.** The fact that the trustees of an incorporated hospital committed for a period of years the entire control and management of a hospital to its president did not authorize him to convey its real estate without express authority from them. And where the purchaser did not purchase in reliance upon his apparent authority to make a deed without the authorization of the board of trustees, but relied upon the truth of the false recital in his acknowledgment that the deed was in fact made by him by their authority, his deed is not good against their disavowal promptly made after discovery.

4. ————: ————: **Avoidance of Unauthorized Deed: Prompt Action: Estoppel: Laches.** The deed of the president of an incorporated hospital, made without the necessary authorization of its board of directors, may be set aside by appropriate action on their part if timely instituted after its discovery. But they are estopped to avoid it if it was duly recorded, some of them had actual knowledge of its existence two or three months before his death and they acquiesced therein nearly four years after his death, where in the meantime conditions have materially changed, the rights of third parties acting in good faith have intervened, his estate and the estate of the purchaser have been settled and distributed, the lips of persons knowing material facts have been closed by death, and the fair inference from the evidence is that the hospital received the proceeds of the unauthorized sale. In such case the hospital is estopped by delay, neglect and laches of its trustees to disavow the unauthorized sale by its president, or to assert that his deed was insufficient to convey the title.

5. ———: ———: ———: **Presumption of Right Action.** If the actual facts are not shown, the presumption of right conduct, rather than wrongful conduct, is indulged, and such presumption aids materially in determining whether the hospital, whose real estate its deceased president sold without authority of its dormant, directors, received the proceeds of the sale; and where its then overdue taxes and overdue notes were simultaneously paid, it will likewise be presumed, in the absence of any showing to the contrary, that he used the money so received to pay them.

6. **TESTIMONY: Agents of Deceased Persons: Immaterial.** Where there is little in the testimony of the agents of deceased persons that could materially affect the result reached, it is unnecessary to decide whether or not it was error to permit them to testify.

7. **DECREE: Suit to Set Aside Unauthorized Deed: Dismissal: Determines Title.** The necessary effect of a judgment dismissing plaintiff's petition to set aside an unauthorized deed is to adjudge that all right and title of plaintiff vested in the grantee by virtue of said deed, and if defendants do not complain of such a judgment, the court is not called upon to consider a complaint by plaintiff that the decree did not determine the rights and titles of the several parties.

Citations to Headnotes: 1, Charities, 11 C. J. 71; 2, Trusts, 39 Cyc. 379; 3 and 4, Corporations, 14a C. J. 2264, 2505; 5, Evidence, 22 C. J. 82; 6 and 7, Appeal and Error, 4 C. J. 2952, 2592.

Appeal from St. Louis City Circuit Court.—*Hon. John W. Calhoun,* Judge.

Affirmed.

*Anderson, Gilbert & Wolfort, Frank X. Hiemenz* and *Edward W. Foristel* for appellant.

(1) The officers of the corporation can exercise only such powers as are granted them by the by-laws of the corporation or by a duly organized meeting of the board of directors. Union Natl. Bank v. State Natl. Bank, 155 Mo. 108; Danglade & Robinson Mining Co. v. Mexico-Joplin Land Co., 190 S. W. 35; Coleman v. Mutual Life Ins. Co., 201 S. W. 544. (2) The officers of a corporation, as such, have no authority to convey the corporate real estate without the authorization of the

board of directors. Green v. Hugo, 81 Tex. 452; McKeag v. Collins, 87 Mo. 164; Hall v. Bank, 145 Mo. 418; Gashwiler v. Willis, 33 Cal. 11; Fitzhugh v. Franco-Texan Land Co., 81 Tex. 306; Graferman Dairy Co. v. Bank, 235 S. W. 435. (3) The fact that the board of directors seldom met, took but little interest in the affairs of the corporation and left the management of the business of the corporation to the president, who treated the institution as his own property, confers no authority on the president to convey corporate lands. McKeag v. Collins, 87 Mo. 169. (4) One claiming under a contract executed by an agent is bound to know the extent of the agent's authority. Green v. Hugo, 81 Tex. 452; Alexander v. Cauldwell, 83 N. Y. 480; Franco-Texan Land Co. v. McCormick, 85 Tex. 416; Sidway v. Land Co., 163 Mo. 342; Taylor v. George, 176 Mo. App. 215. (5) The president and secretary of the board of trustees of an eleemosynary institution have no power to make a deed of the corporate property, unless authorized to do so by the board of trustees. Mott v. Danville Seminary, 129 Ill. 403. (6) An agent of a grantee in a deed is not competent to testify to an oral agreement between him as such agent and the deceased president of a company which purports to be the grantor in an alleged deed. Green Real Estate Co. v. Mutual House Bldg. Co., 196 Mo. 358; Williams v. Edwards, 94 Mo. 447. (7) It was the duty of the trial court under the conditions and the issues in this case to try, ascertain, find and adjudge the respective interest of the parties to this action in and to the real estate involved in this suit, and the judgment dismissing the bill was improper. Maynor v. Land Co., 236 Mo. 728; Ev. Church v. Schrieber, 277 Mo. 126; R. S. 1919, sec. 1970.

*C. William Koenig* and *Julius T. Muench* for respondents.

(1) The power of an officer of a corporation to bind the corporation is governed by the law of agency, and, where an officer has been permitted to manage all the

business of a corporation, is for all practical and business purposes the corporation, his authority to bind it will be implied from the actual or apparent power thus conferred upon him or inferred from the same evidence which would justify the inference in the case of a natural person, and the corporation is estopped to deny his acts. Moore v. Gaus & Sons Mfg. Co., 113 Mo. 98; Washington Savings Bank v. Butchers & Drovers Bank, 107 Mo. 133; Sparks v. Dispatch Transportation Co., 104 Mo. 531; Pasche v. South St. Joseph Town Co., 174 Mo. App. 614; Tyler Est. v. Hoffman, 146 Mo. App. 610; Coal Co. v. Mining Co., 207 S. W. 268; Lyons v. Corder, 253 Mo. 539; Christian University v. Jordan, 28 Mo. 68; Jones v. Williams, 139 Mo. 1; Fourtelet v. Whithed, 9 N. Dak. 474; Fletcher on Corp., secs. 1731, 1906, 1907. (2) A board of directors may, through custom and usage, delegate its power to the president of the corporation. And where the board of directors, or trustees, allow one of their number to conduct and transact the business of the corporation, he is the same as an executive committee or general manager or managing director, and is the *alter ego* of the corporation, and his acts bind the corporation, even though there was no formal vote giving him authority. Fitzgerald Const. Co. v. Fitzgerald, 137 U. S. 98; Tyler Estate v. Hoffman, 146 Mo. App. 510; Jones v. Williams, 139 Mo. 1; Washington Savings Bank v. Butchers & Drovers Bank, 107 Mo. 133; Chestnut Trust & Savings Fund Co. v. Record Pub. Co., 227 Pa. St. 235; Edwards v. Light & Water Co., 49 Mont. 535; Martin v. Webb, 110 U. S. 7; McCormick v. Unity Co., 142 Ill. App. 172; 3 Fletcher on Corporations, secs. 1904, 2034; Morawetz on Corporations, sec. 538. (3) A corporation may ratify the acts of its president through acquiescence, by receiving the benefits of the contract, and by delay. And ratification will be construed as antecedent authority if the corporation acquiesces in the act or neglects to promptly disavow it after knowledge thereof. R. S. 1909, sec. 2993; R. S. 1919, sec. 9753; Mining Co. v. Taylor, 247 Mo. 1; First National Bank v. Fricke, 75 Mo. 178; Camp-

bell v. Pope, 96 Mo. 468; Washington Savings Bank v. Bank, 107 Mo. 133; Jones v. Williams, 139 Mo. 1; Quinn v. Assurance Co., 183 Mo. App. 19; Murray v. Beal, 23 Utah, 548; 3 Fletcher on Corporations, secs. 1831, 2022; Field on Corporations, sec. 167. (4) The recourse against an *ultra vires* act or voidable contract of an officer of a corporation in the disposition of corporate property lies in an action against such officer, or his estate, and not against a bona-fide purchaser for value without notice. Furthermore, the option to avoid a voidable contract is lost if wholly executed or executed by the adverse party. Mining Co. v. Taylor, 247 Mo. 1; Smith v. Richardson, 77 Mo. App. 422; Gilbert v. Finch, 173 N. Y. 455; Gallery v. National Exch. Bank, 41 Mich. 169. (5) A corporation is responsible for the negligence of its board of directors, and when that has been the proximate cause of injury to another, the corporation, and not that other, must bear the loss. When one of two innocent parties must suffer, then the loss should fall on the one by whose fault or negligence the injury was caused. Fairgate Realty Co. v. Drozda, 181 S. W. 398; Gate City B. & L. Assn. v. Bank of Commerce, 126 Mo. 82. (6) Payment of the purchase price of the property in controversy to the agent of the appellant corporation was payment to the corporation, regardless of what may have thereafter been done with the money. It was not the duty of Herrmann to follow the check and see that it was properly applied. Building & Loan Assn. v. Bank, 126 Mo. 82; Drumheler v. Haff, 23 Mo. App. 161; A. H. Whitney Co. v. Burnham, 48 Mo. App. 340. A bona-fide purchaser from a trustee or other fiduciary is under no legal obligation or responsibility to follow the funds paid into the corporate treasury or to see to their application. R. S. 1909, sec. 11927; R. S. 1919, sec. 13426; Orr v. Rode, 101 Mo. 387. (7) A party who comes into a court of equity to enforce an equitable claim must not delay until his adversary is exposed to the danger of injustice from loss of means of recourse against another, occasioned by deaths, insolvencies and other untoward

acts. Smith v. Thompson, 7 Gratt. (48 Va.) 112; Williard v. Woods, 164 U. S. 502; Dunscomb v. Railroad, 158 C. C. A. 458; Vermilion County Children's Home v. Warner, 192 Ill. 594; Home for Poor v. Coleman, 122 Ky. 544; Becket First Cong. Soc. v. Snow, 1 Cush. (Mass.) 510. Equity views with disfavor a suit which would "make the dead sin in their graves," where such suit might have been brought during the lifetime of parties acquainted with the whole business. McClanahan v. West, 100 Mo. 324; Dexter v. McDonald, 196 Mo. 373, 399.

DAVID E. BLAIR, J.—Suit in equity to cancel a deed to real estate, and for other relief. From the judgment of the trial court dismissing its petition, plaintiff has appealed.

In substance, the petition alleged that plaintiff is a corporation, organized under Chapter 10, Article XXXIII, Revised Statutes 1909, to conduct a hospital, and that defendant Modoc Realty Company is a Missouri business corporation; that on June 6, 1903, one Josephine M. Heitkamp (hereafter referred to as "testatrix") made and executed a ninety-nine-year lease covering the real estate in the city of St. Louis here involved, to John P. Hermann, Jr., Real Estate Company, on certain terms and conditions; that said testatrix died January 29, 1904, seized of an estate in fee simple in said real estate, subject to said ninety-nine-year lease; that, by her last will and testament, duly probated February 2, 1904, testatrix named said John P. Hermann as executor, and that he qualified as such and duly administered said estate and was finally discharged; that, among other things, testatrix devised to plaintiff corporation the real estate here involved, in trust to apply the net income thereof, or the income of any fund or property into which same might be converted, to the maintenance and support of Josephine Hospital at St. Louis (hereinafter referred to as "hospital"), giving said hospital full power to sell, lease and encumber said real estate and to reinvest the proceeds; that such de-

vise by testatrix was in addition to other money and property testatrix had provided in her lifetime for the support of said hospital and for the purchase of a site and the erection of buildings therefor; that said hospital corporation was organized as part of the plan of testatrix to endow said hospital, to be operated by the plaintiff corporation, and to receive such endowment and gifts of land; that testatrix was one of the trustees of plaintiff corporation during her lifetime; that the board consisted of seven trustees, to be elected pursuant to by-laws enacted by plaintiff corporation, the officers thereof to consist of president, vice-president, secretary and treasurer, and to be elected annually from said trustees; that plaintiff corporation accepted the gift of site and buildings from testatrix and has ever since operated said hospital.

It is further alleged that, on October 1, 1904, John P. Hermann, Jr., Real Estate Company leased the premises here involved for the remainder of said ninety-nine-year term to defendant Modoc Realty Company; that on December 3, 1913, the John P. Hermann, Jr., Real Estate Company conveyed said real estate to John P. Hermann, Jr., (the same person referred to herein as "John P. Hermann"); that on May 8, 1914, Frank J. Lutz (referred to as "Dr. Lutz") was president of plaintiff, and that, on said date and without authority of the plaintiff corporation or its board or trustees and without their knowledge or consent, he executed a deed to John P. Hermann, Jr., wherein and whereby he attempted to convey said real estate to said Hermann, and that said deed came into the possession of said Hermann and was placed of record on May 9, 1914; that the execution of said deed by Dr. Lutz was carefully concealed from the trustees of the plaintiff corporation and that they did not learn of its existence until shortly before the filing of the petition; that Dr. Lutz did not affix the corporate seal of plaintiff corporation to said deed, but did affix thereto the seal of a different corporation.

It was further alleged that, on July 6, 1914, Hermann, as record owner of the fee, and Modoc Realty Company,

as owner of the lease, jointly executed a deed of trust conveying said real estate to one Julius L. Winkelmeyer, trustee, to secure payment of certain promissory notes aggregating $10,000, and that said deed of trust was duly recorded; that on May 27, 1917, John P. Hermann conveyed the said real estate to the Modoc Realty Company, whereby the reversion and the leasehold merged and said Modoc Realty Company became the record owner of the fee simple title to said real estate; that, on September 27, 1917, defendant Modoc Realty Company executed its deed of trust thereon to defendant Christopher Winkelmeyer, trustee, to secure payment of a note of $4500 and interest.

It was then alleged that unknown persons are interested in the subject-matter of the suit to an extent unknown to plaintiff corporation; that the alleged deed by Dr. Lutz to Hermann and the other conveyances constitute a cloud upon the title of plaintiff corporation and, if allowed to stand, will continue to cloud said title, to the irreparable damage of the plaintiff corporation.

The prayer of said petition was that said instruments be canceled and that the court decree plaintiff to be the owner in fee simple.

The separate amended answer of defendant Modoc Realty Company contained a general denial, and alleged that, on and prior to May 8, 1914, the date of the Dr. Lutz deed, plaintiff corporation was owner of the real estate here involved and other property, and that all of such property was heavily encumbered for general and special taxes, and that said real estate was subject to the unexpired term of said ninety-nine-year lease; that said real estate was reasonably worth $6,700, without improvements, and that Hermann purchased the same for the sum of $7,272.72. It then alleged that a deed therefor was duly executed by plaintiff corporation and recorded; that the purchase money was paid to plaintiff corporation by Hermann, and by it applied to the payment of debts and taxes due on said real estate and other property and, after a commission was paid, $6,433.12

was duly paid to plaintiff corporation. Said answer then alleged the execution of two deeds of trust and the conveyance by said Hermann to said defendant, as alleged in the petition. It was then alleged that the sale of the real estate to Hermann was made with the knowledge and consent of plaintiff corporation and for the purpose of protecting it from the loss of all its property; that such purchase was made by said defendant from Hermann in good faith and without knowledge of the facts set out in the petition; that the trustees of the hospital knew, or by the exercise of ordinary care would have known, all the facts and circumstances surrounding and in connection with the business of plaintiff corporation, including the transactions of its president, Dr. Lutz, and either approved thereof or connived therein and stood by and made no complaint; that Dr. Lutz died March 24, 1916, and John P. Hermann September 3, 1917, and that the estates of both were administered and finally settled, and that said defendant is barred from proceeding against such estates; that plaintiff corporation does not and has not offered to return the benefits it derived from such sale or to reimburse said defendant or said Hermann for improvements on said property.

Said answer then alleged that the sale to Hermann occurred in 1914 and that the sale to said defendant occurred in 1917, and that plaintiff corporation stood by and failed to complain and permitted third and innocent parties to invest their money on the strength of said transactions, and that plaintiff corporation's complaint now comes too late.

The reply was a general denial.. All defendants, except Modoc Realty Company, made default. The evidence was largely uncontradicted and, in a general way, sustained the allegations of the petition. The questions presented are mostly questions of proper application of the law to the facts.

It appears that very few meetings of the board of trustees of the hospital were held prior to the death of Dr. Lutz. Those meetings were held in the first nine

years after the hospital was incorporated and during the lifetime of testatrix. No meetings whatever were held from 1904 until after the death of Dr. Lutz in 1916. Vacancies in the board caused by death had not been filled. After the death of Dr. Lutz, substantial citizens of St. Louis were elected to fill the full quota of trustees. They authorized the bringing of this suit.

Except possibly Dr. Stoffel, who was an active assistant of Dr. Lutz, trustees, other than Dr. Lutz, apparently took no part in the management of the hospital and left everything to Dr. Lutz. The execution of the deed to Hermann by Dr. Lutz as president and attested by Dr. Stoffel as secretary, was not authorized by the board of trustees. Nor does it appear that any of the other trustees, except possibly Dr. Stoffel, knew that Dr. Lutz had made such deed. Even Dr. Stoffel testified he did not know he had attested any deed as secretary. Dr. Stoffel was treasurer and not secretary. Neither he nor Dr. Lutz had been elected annually, as the articles of association provided for, but they and the other officers held over year after year without re-election. The hospital apparently never adopted a seal. The seal affixed to the deed to Hermann bore the inscription "Training School for Nurses. Josephine Hospital, Incorporated 1895."

It is suggested in the evidence that testatrix conceived the organization of the hospital and her gifts to it largely to establish a hospital for Dr. Lutz, who had been her physician and close friend for many years. Such seems to have been the idea of the other surviving trustees from 1904 until 1916. Their actions and conduct indicate that they regarded the hospital as nothing more or less than a Lutz institution. They were apparently satisfied to permit him to run it as he saw fit. Expressions of dissatisfaction were shown to have been uttered occasionally, but no action was taken to re-assume their duties as trustees, or to interfere in any way with Dr. Lutz in his management. There were no minutes of any meeting of the trustees showing that the president was

granted authority to execute the deed on behalf of the hospital. That no such authority was in fact given to Dr. Lutz is fairly established from all the evidence. No attempt was made by defendants to make any such showing.

Some of the trustees learned of the Hermann deed two or three months before the death of Dr. Lutz on March 24, 1916. This suit was filed December 26, 1919, or over three years and nine months after his death and about four years after the execution of the deed was known to trustees other than Dr. Lutz.

The evidence shows that John P. Hermann handled the properties of testatrix before she devised same to plaintiff corporation and was thoroughly familiar with all her property and that he later acted as her executor without bond. There is no evidence that Hermann knew that Dr. Lutz was permitted by the trustees to manage and control the properties and funds of the hospital as he saw fit without their knowledge and approval, nor that he had knowledge that the deed to himself in the name of the hospital by Dr. Lutz as president was not executed by authority of the trustees, as it purported to be. So far as shown by the evidence the price paid for the real estate, subject to the ninety-nine-year lease, was not less than its then reasonable market value.

Part of the proceeds of the sale of real estate, $6,433.12, was paid by means of a check, signed by J. I. Epstein, who consummated the sale, and payable to the hospital. From a deposit slip and an entry in the pass book of Dr. Lutz, it appears that the identical amount of money was deposited in the bank by Dr. Lutz in his own name on the same date borne by such check. It is therefore reasonably certain that such deposit consisted of said check drawn to the order of the hospital. It bears this indorsement: "Josephine Hospital Corp. per F. J. Lutz, Pres." Followed by the individual signature of F. J. Lutz. There is nothing in the record, except inferences therefrom as hereafter noticed, to show whether Dr. Lutz used the money for his individual purposes or expended it for the benefit of the hospital.

The hospital contends that Dr. Lutz also received six hundred dollars from Epstein as part of the purchase price and deposited the same on May 1, 1914. Epstein's testimony is that, after deducting his commission and other charges, he paid the proceeds to the hospital and that he paid same *in one check* in the sum of $6,433.12.

None of the money ever reached the treasury of the hospital. Dr. Stoffel was treasurer and he received none of it. It is contended that all of it was taken by Dr. Lutz and used for his own purposes. It is true that the money was deposited to his individual account and doubtless true also that it was checked out upon his individual checks, although there is no evidence as to the latter. For what purpose the money was used, whether for corporate purposes or his individual use, is not shown by any direct evidence in the record.

Upon the foregoing pleadings and under the evidence noted, the trial court found for defendants and dismissed the petition of plaintiff corporation. Six assignments of error are made in this court. Four of them relate to alleged error in dismissing plaintiff's bill, failure to adjudge plaintiff to be the owner of the real estate, and failure to adjudge and decree the interests of the respective parties therein. Two of the assignments relate to the admission and rejection of evidence.

The trustees had power to sell the property in question. The will of testatrix so provided and the charter of the hospital did not forbid it. The fact that the will provided that the proceeds of any sale should be reinvested and only the net income used for the purposes of the hospital, cast no burden upon a purchaser to see that the proceeds of such sale were properly applied by the hospital. The will did not purport to charge a purchaser with any such duty. [Sec. 13426, R. S. 1919; 39 Cyc. 379; Orr v. Rode, 101 Mo. 387, 397; Gate City B. & L. Assn. v. National Bank of Commerce, 126 Mo. 82; Drumheler v. Haff, 23 Mo. App. 161.]

After a careful examination of the authorities, we have concluded that the fact that the trustees, over a

period of years, left the entire management and control of the hospital and its property to Dr. Lutz, the president, gave him no authority to convey its real estate without express authority from the trustees. John P. Hermann did not purchase the property relying upon any *apparent* authority of Dr. Lutz to make a deed, without being authorized to do so by the board of trustees. He apparently accepted it relying upon the truth of the recital in the acknowledgment, that the deed was in fact made by the president by authority of the trustees. [Grafeman Dairy Co. v. Bank, 290 Mo. 312; Union National Bank v. State National Bank, 155 Mo. 95; McKeag v. Collins, 87 Mo. 164; Hall v. Farmers & Merchants Bank, 145 Mo. 418.]

None of the cases, cited and relied upon by defendants, go so far as to hold that the president of a corporation may convey the real estate of the corporation, when he is not duly authorized so to do by the board of directors, and thereby convey title, good against the dissent and disavowal of the directors, where they act promptly after discovery of the purported conveyance. In most of the cases cited by defendants, the transactions were in the usual course of the business of the corporation and are clearly distinguishable by such fact. In Tyler Estate v. Hoffman, 146 Mo. App. 510, and Sinclair Coal Co. v. Mining Co., 207 S. W. 266, the property conveyed was personal and not real property and the respective corporations got the full benefit of the transactions. There are also other distinguishing facts.

We have concluded that the deed of Dr. Lutz was not sufficient to bind the hospital and could have been set aside by timely and appropriate action on its part. It could have been avoided because the president had no express authority from the trustees to execute it. It is unnecessary to consider the effect of the use by Dr. Lutz of a seal other than the corporate seal or the effect of the attestation of the deed by Dr. Stoffel, who was treasurer of the corporation and not its secretary.

But, assuming that the execution of the deed was

unauthorized and that upon discovery of its execution the hospital was entitled to have it set aside, it is contended by defendants that the hospital, at the time this suit was instituted, was estopped to avoid said deed because of the failure of its trustees, after discovery of its execution and delivery, to take steps promptly to have the same set aside.

It is not contended that any statute of limitation bars the action, but that equity and good conscience required the hospital and its trustees to act promptly and not to delay action and apparently acquiesce until conditions changed and rights of third persons had intervened and death had sealed the lips of persons knowing the facts and until the estates of persons liable for restitution to injured third parties had been administered and dissipated. We are impressed with the merit of such contention upon the facts in this record.

The deed was promptly recorded and that record gave notice of the purported conveyance to all the world. Trustees Dr. Stoffel and Judge Harrison had actual knowledge of the existence of the deed by Dr. Lutz, another trustee at least two months before the death of Dr. Lutz, in March, 1916. The three of them constituted a majority of the trustees surviving at that time. John P. Hermann did not die until September, 1917, or until twenty months after Dr. Stoffel and Judge Harrison acquired such knowledge. Dr. Lutz's estate was administered and closed October 10, 1919, and that of Hermann, October 13, 1919. The deed of trust, securing a note for an unpaid balance of $4300, was executed by defendant Modoc Realty Company in unquestioned good faith in September, 1917, or twenty months after such knowledge was acquired. In the latter transaction at least, the rights of innocent third persons intervened. The first deed of trust, executed by Hermann and Modoc Realty Company jointly, antedated such knowledge on the part of Judge Harrison and on the part of Dr. Stoffel, if his testimony, that he did not know he was attesting a deed, was true. The deed of Herman to Modoc Realty

Company in May, 1917, was about sixteen months later, but Hermann was really that corporation. The petition in this case was not filed until December 26, 1919, which was after the occurrence of any of the events above recited.

It will be noted that the petition did not allege that the hospital did not get the benefit of the proceeds of the sale or that Dr. Lutz converted the same to his own use. The answer alleged that the hospital did get such proceeds. We think the fair inference to be drawn from all the evidence is that the hospital did get the benefit of such proceeds. The absence of any showing from the records and the untimely death of Dr. Lutz leave the question in uncertainty, so far as the actual facts are concerned. Where the actual facts are not shown, the presumption of right conduct, rather than wrongful conduct, on the part of Dr. Lutz steps in and lends material aid in determining such issue.

Again, it appears that Mr. Epstein, the real estate agent who negotiated the sale, deducted certain charges, said to have existed against the property. His commission was $109.10. The sale price was $7,272.72. Epstein testified that he turned over to the hospital in one check the proceeds of the sale in the sum of $6433.12. It may thus be fairly inferred that the sum of $730.50 of the proceeds was used to pay off charges and liens against the property.

Lastly, it appears that there were two notes of the hospital due to banks, which Dr. Stoffel testified required payment, and, as we understand the testimony, he took up with Dr. Lutz the matter of payment of said notes and it was suggested that property of the hospital be sold to pay off same. The amount of the notes does not appear. After the lapse of several years and in the absence of any showing by the hospital of any other use of the proceeds of the sale and the failure of the hospital to show that such notes were paid out of any other of its funds, it is only fair to infer that these notes were in fact paid out of the check for $6,433.12 deposited by Dr. Lutz

in his personal account. While the evidence does not clearly show it, the whole record gives the impression that Dr. Lutz had handled the affairs of the hospital in that way for several years.

Thus we have a situation where the delay in bringing the action has permitted conditions to be materially changed and the rights of third parties to intervene. We have a showing, in part of testimony and in part by the indulgence of permissible inferences, that the hospital got the benefit of the proceeds of the sale. Hence, we think the hospital waited too long to institute proceedings to set aside the unauthorized deed, and that it would be unjust and inequitable to permit it to maintain the suit filed in December, 1919.

In 10 Cyc. 1073, it is said: "Where the president of a corporation executes in its behalf, and within the scope of its charter, a contract which requires the concurrence of the board of directors, and the board, knowing that he has done so, does not dissent within a reasonable time, it will be presumed to have ratified the act." The foregoing general statement of the law applies to the case in hand.

In Common Sense Mining Company v. Taylor, 247 Mo. 1, GRAVES, J., said: "The contract involved here was within the scope of the plaintiff's charter. No contention is made to the contrary. Such act of the president and secretary in this case was known to the corporation through its directors for more than five months. Under the circumstances of this case that is a reasonable time in which to disown the act of the officers, even if such act was not fully authorized. This delay upon the part of the corporation amounts to acquiescing in and ratifying the unauthorized contract." The facts in that case were stronger than they are here, but, considering the circumstances and the long elapsed time in this case, the rule announced is controlling.

Counsel have cited no cases to the contrary. The rule above announced is supported by numerous other cases cited by respondent, among which are First Na-

tional Bank of Springfield v. Fricke, 75 Mo. 178, l. c. 183 and 184; Campbell v. Pope, 96 Mo. 468, l. c. 473, and Washington Savings Bank v. Butchers and Drovers' Bank, 107 Mo. 133, l. c. 145.

We, therefore, hold that the appellant hospital is estopped by delay, neglect and laches of its trustees to say that the deed executed by Dr. Lutz was unauthorized and insufficient to convey the title of the hospital and that the trustees have thereby ratified his deed. The trial court decided the case correctly.

Complaint is made of the action of the trial court in permitting the agents of deceased persons to testify. As there was little in such testimony which could materially affect the conclusion we have reached, we think it is unnecessary to consider such assignment.

Complaint is also made because the trial court dismissed plaintiff's petition without adjudging and determining the rights and titles of the several parties. As the necessary effect of the judgment below was to find that all right and title of plaintiff in the property vested in defendants by virtue of the deed of May 8, 1914, and as defendants are not here complaining of the judgment in that respect, we are not called upon to consider such assignment.

The judgment is affirmed. All concur.