## OF THE

## STATE OF MISSOURI

### AT THE

### OCTOBER TERM, 1912.

*(Continued from Volume 246)*

## COMMON SENSE MINING COMPANY, Appellant, v. H. L. TAYLOR et al.

### Division One, December 24, 1912.

1. **CORPORATION: Debts: Sale of Assets.** The directors of a corporation in failing circumstances have the legal right to sell its assets to pay its debts.

2. ————: **Knowledge of President: Estoppel.** Knowledge of the corporation's president is the knowledge of the corporation itself, unless there is fraudulent conduct upon the part of such officer participated in by those claiming under the disputed contract.

3. ————: **Contract of Sale of Mining Lease: At Special Meeting: No Notice to Directors: Estoppel.** A corporation, in embarrassing circumstances, with no available means to pay its debts, which, by a contract, valid on its face and purporting to be signed by authority of its board of directors, executed at a special meeting of its directors, for which no notice had been given and from which a minority were absent, sells its mining lease and machinery to an individual in consideration that he pay its debts within ten days, with a provision in the contract for an extension, and extended for another ten days, by its

Mining Co. v. Taylor.

president on being informed· that defendants would purchase if such extension were made, and within that time assigned by the purchaser to said defendants, who, with no knowledge. that notice of the special meeting had not been given, through such purchaser, with the company's knowledge and acquiescence, pay all the company's debts, enter into possession, and continue to operate the mine and spend large sums of money in improving it, is estopped to deny that said contract was not authorized by its board of directors at a legal meeting.

4. ——: Estoppel: Ratification: Enjoyment of Fruits. A corporation is estopped to deny the validity of a contract unauthorized by its board of directors, by a resolution thereafter attempting to rescind it and declaring it rescinded for the failure of the other party to perform, and by accepting the full measure of the consideration inducing its execution.

5. ——: Estoppel: Unauthorized Contract: Fully Performed. A corporation is estopped to assert the invalidity of a contract, which is not *ultra vires*, but only voidable because not authorized by its board of directors, and which has been fully performed, while it stood by and, with knowledge and without objection, saw thousands of dollars spent on the faith of its validity. by an assignee who had no knowledge of its infirmity.

6. ——: ——: Notice of Directors' Meeting: Innocent Third Parties. Failure to give notice of a directors' meeting cannot be set up by the corporation to defeat the rights of the assignee of the other party to the contract which recites it was authorized by its board of directors, said assignee being without knowledge of the irregularity or illegality in the directors' meeting.

7. ——: Ratification: By Silence. A contract within the scope of the charter powers of a corporation, having no other infirmity than the failure of the board of directors to authorize it, and known by them to have been executed by its president in its behalf, will be presumed to have been ratified by them, unless repudiated within a reasonable time.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Charles H. Winston* for appellant.

(1) Inasmuch as plaintiff's by-laws provide that the board of directors shall have management and

control of the business of the corporation, and shall meet on the second Tuesday of each month and at such other times as the board may, by resolution, direct, and as said by-laws provide that no officer or employee of the company shall have power to bind the company by contract without the express authority of the board of directors, and as the board of directors did not by resolution or otherwise direct a meeting of the board to be held on April 18, 1906, and as only the five directors who attended were notified of that meeting, and the other two directors, Van Dorp and Braucher, were not notified and did not attend, the so-called contract of those five directors and Taylor pleaded by defendants is not the contract of plaintiff, nor is it binding on plaintiff. The pretended contract pleaded by defendants was not and could not be made or authorized by the board of directors at that pretended meeting. Hill v. Mining Co., 119 Mo. 29; Coal Co. v. Watson, 107 Mo. App. 451. (2) The telegram was sent by Sanderson without authority of the board of directors. There was no meeting of the board of directors in reference to it. There was no extension of the contract, even if such contract ever existed. The directors themselves could not extend it without assembling and holding a meeting of the board as such. Hill v. Mining Co., 119 Mo. 9. (3) There is no estoppel barring plaintiff's recovery in this action. Steel v. St. Louis S. & R. Co., 106 U. S. 447; Gray v. Gray, 83 Mo. 106; Curtis v. Browne, 63 Mo. App. 431; Galbraith v. Newton, 30 Mo. App. 380; Blodgett v. Perry, 97 Mo. 263; Douglas v. Cissna, 7 Mo. App. 44; Taylor v. Zepp, 14 Mo. 482; Terrill v. Bouleware, 24 Mo. 254; Burke v. Adams, 80 Mo. 504; Newman v. Hook, 37 Mo. 207; Sutton v. Dameron, 100 Mo. 141; Bales v. Perry, 51 Mo. 449; Lumber Co. v. Kreeger, 52 Mo. App. 418; Railroad v. Apperson, 97 Mo. 300; St. Louis v. Schulenburg Co., 98 Mo. 613; Stagg v. Linnenfelser, 59 Mo. 336; Austin v. Loring, 63 Mo.

19; Bartlett v. Kander, 97 Mo. 356; Throckmorton v. Pence, 121 Mo. 50; State v. Branch, 151 Mo. 622; Gale v. Ins. Co., 33 Mo. App. 664; Smith v. Roach, 59 Mo. App. 115; Smith v. McPike, 70 Mo. 175; State to use v. Berning, 74 Mo. 87; Nichols v. Bank, 55 Mo. App. 81. a. Because none is pleaded by defendants, whose answers aver a contract of purchase from plaintiff and performance by defendants. Golden v. Tyler, 180 Mo. 196; Carthage v. Carthage L. Co., 97 Mo. App. 20; McDonald v. DeSoto S. & B. Assn., 175 Mo. 250. b. Because both plaintiff and defendants had equal means of knowledge. Defendants knew the truth. Bales v. Perry, 51 Mo. 449; Blodgett v. Perry, 97 Mo. 263; Thompson v. Renoe, 12 Mo. 157; Olden v. Hendricks, 100 Mo. 533: Galbraith v. Newton, 30 Mo. App. 380; Taylor v. Zepp, 14 Mo. 482; Terrill v. Bouleware, 24 Mo. 254; Burke v. Adams, 80 Mo. 504; Douglas v. Cissna, 17 Mo. App. 44; Wurmser v. Frederick, 62 Mo. App. 634; Rosenkranz v. Swofford, 175 Mo. 518; Harrison v. McReynolds, 183 Mo. 533. (c). Because defendants were acquainted with the true character of their own title or with the fact that they had none. Steel v. St. L. S. & R. Co., 106 U. S. 447; Brant v. Coal & I. Co., 93 U. S. 327; Henshaw v. Bissell, 85 U. S. 271; Bump v. Butter, 93 Fed. 300; Elliott v. Keith, 121 Ga. 121; Pointer v. Chapman, 8 Utah, 452; Houser v. Austin, 2 Idaho, 199. d. Because Moore and Bushnell and Taylor never intended to be, and were not, fair in the transactions. If they had intended to be fair, they would not have taken possession or operated the mine, till they got title or at least were sure of a valid and fair contract binding themselves as well as plaintiff. Electric Street S. Co. v. Mfg. Co., 125 Mo. 140; Wilson v. St. L. & W. R. Co., 120 Mo. 58; Cassidy v. Metcalf, 1 Mo. App. 593; 66 Mo. 519; Southworth v. Hopkins, 11 Mo. 331; Hollmann v. Conlon, 143 Mo. 369. e. Because no man is entitled to the aid of a court of equity when that aid becomes necessary by

his fault. If the defendants had promptly within time have paid the claims as listed and then taken the papers held by the Conqueror Trust Company, such aid as they now ask would not have been necessary. It was their neglect or fraud by which those claims were left unpaid. State v. Potter, 63 Mo. 212; Quinlan v. Keiser, 66 Mo. 605; Hollmann v. Conlon, 143 Mo. 383. f. Because Moore and Bushnell as well as Taylor, were wrongfully defrauding plaintiff and they authorized all that Taylor did in wasting and injuring plaintiff's premises, and in the discounting of the bills listed to be paid and in the refusal and failure to pay same. *Omnia praesumuntur in odium spolia toris.* Pomeroy v. Benton, 57 Mo. 531, and 77 Mo. 64; Ferneau v. Whitford, 39 Mo. App. 311; State v. Alexander, 119 Mo. 447; State v. Potter, 9 Mo. 356. g. Because the secret oral agreement between Moore and Bushnell and Taylor, whereby he was to receive a salary, management, control and share of the property, and to make it profitable to Moore and Bushnell, was a fraud on the rights of plaintiff, whose agent he undertook to be in the proposed sale under his proposition to the five directors who entrusted him in the matter. Pomeroy v. Benton, 57 Mo. 531.

*Fred L. Williams* for respondents.

(1) The contract was binding upon the plaintiff. 1st. The contract itself duly signed by plaintiff's president and attested by plaintiff's secretary raises the presumption that it was with full authority from plaintiff and that the officers of plaintiff had the authority to execute the instrument. 3 Clark & Marshall on Private Corporations, par. 682, p. 2090. 2d. It was not necessary that the corporate seal of the plaintiff be placed upon said contract to make it legal or binding upon the plaintiff corporation. Buckley v. Briggs, 30 Mo. 452. Sec. 2993, R. S. 1909, provides

that corporations may even contract by parol. 3d There is no evidence offered by plaintiff that Van Dorp and Braucher, the other two directors of the corporation, did not have notice of the meeting, but on the other hand, Farquhar, the secretary of the plaintiff, testifies that Van Dorp was notified of the meeting by telephone. Sanderson testifies that Braucher was in Kansas City and present with the other directors when Taylor's proposition was discussed. The legal presumption is that all directors were properly notified. Ins. Co. v. Holmes, 68 Mo. 601; Rutherford v. Hamilton, 97 Mo. 549; Pitman v. Lead & Zinc Co., 113 Mo. App. 518; 2 Thompson on Corporations (2 Ed.), par. 1144, p. 78. 4th. The board of directors of a corporation have power to sell or convey all the assets of a company in order to pay the debts of the company. 3 Clark & Marshall on Private Corporations, par. 691 (c), pp. 2100, 2101, 2102; Ib., par. 779 (a), p. 2362; 5 Thompson on Corporations (2 Ed.), par. 6138, p. 958; Hutchinson v. Green, 91 Mo. 367; Chew v. Ellingwood, 86 Mo. 273; Shockley v. Fisher, 75 Mo. 501; Descombes v. Wood, 91 Mo. 196; Foster v. Planing Mill Co., 92 Mo. 89; Bank v. Iron Co., 97 Mo. 44; Huse v. Ames, 104 Mo. 92. (2) Plaintiff is estopped to set up defense that the contract was without its authority and void. a. The contract was executed by proper officers of plaintiff. b. The presumption that defendants had a right to rely upon, and upon which they did rely, was that the officers of the company had power to. execute the contract. c. Defendants acting in good faith and upon said contract expended large sums of money on the property, to-wit, approximately $18,000 more than the ore sales from said property. d. The plaintiff received the benefits of said contract by having its debts paid. The estoppel of a corporation to annul an executed agreement, or one whose consideration it has received (which, though unauthorized, it not prohibited by law

or its charter), is grounded on the idea of preventing a fraud by the corporation on the party whom it had misled into the performance of the agreement. Smith v. Richardson, 77 Mo. App. 422; McLaughlin v. College, 20 Mo. App. 42; Bailey v. Trustees, 12 Mo. 174; 3 Clark & Marshall on Private Corporations, sec. 680, p. 2081; Tenney v. Lumber Co., 43 N. H. 343; Kuser v. Wright, 52 N. J. Eq. 825; Wire Co. v. Steel Co., 164 Ill. 149; Brown v. Wright, 25 Mo. App. 54. (3) The plaintiff corporation has ratified the contract. Preston v. Lead Co., 51 Mo. 43; Kiley v. Forsee, 57 Mo. 390; Bank v. Fricke, 75 Mo. 178; Holmes v. Board of Trade, 81 Mo. 137; Campbell v. Pope, 96 Mo. 468; Bank v. Bank, 107 Mo. 133; Donham v. Hahn, 127 Mo. 439; Jones v. Williams, 139 Mo. 1; Moore v. Ins. Co., 56 Mo. 343; Field v. Inv. Co., 123 Mo. 603; State v. Perkins, 90 Mo. 610. (4) Even though there be want of authority from directors to the president to make a contract, it does not render the contract void but only voidable. City v. Bank, 74 Mo. App. 365; Drug Co. v. Robinson, 81 Mo. 18; Field v. Inv. Co., 123 Mo. 603; Hill v. Mining Co., 119 Mo. 9; Ins. Co. v. Smith, 117 Mo. 261; Sparks v. Dispatch Trans. Co., 104 Mo. 531; Lysaght v. Stone Masons' Assn., 55 Mo. App. 547; Winscott v. Inv. Co., 63 Mo. App. 367; Grohmann v. Brown, 68 Mo. App. 630; Smith v. Richardson, 77 Mo. App. 432.

GRAVES, P. J.—Both pleadings and proof in this cause are voluminous in the extreme. Plaintiff, a Missouri corporation, by its petition sues for the possession of a certain mining property in Jasper county, Missouri, which it formerly held and possessed under a mining lease from another company. Monthly rents and profits are alleged to be $2400. Waste is also charged in the aggregate sum of $25,000. The petition concludes with the prayer:

"Wherefore plaintiff prays judgment for the recovery of said premises, and $40,000 damages for unlawfully withholding the same from plaintiff, and the waste and injury aforesaid, and the rents and profits down to the time of assessing the same, and $2400 per month for monthly rents and profits from the rendition of judgment until possession is delivered to plaintiff, and costs," etc.

In fact there was nothing small about plaintiff's case but the result *nisi,* which was to the effect that plaintiff had no interest in the property and was entitled to no damages therefor; not only so, but an affirmative decree that defendants Moore and Bushnell in good conscience were the owners of the property,. and were so decreed it.

The case made and tried *nisi* is well indicated by the answer and the reply. The answer of Taylor, omitting from a contract pleaded the schedule of debts and machinery, is:

"Now in this day comes defendant H. L. Taylor and for his separate amended answer to plaintiff's petition herein, denies each and every allegation therein contained, except such as are hereinafter expressly admitted.

"And for further separate answer this defendant says that on or about the 18th day of April, A. D. 1906, plaintiff was in possession, claiming to be the owner of a certain mining lease, granting to plaintiff the right to mine and use certain mining machinery belonging to New York & St. Louis Mining and Milling Company, on a certain tract of land situate in the county of Jasper and State of Missouri, and described as follows, to-wit: The east one-half of the forty acres known as the 'Royal Lease' more particularly described as follows: The east one-half of the southwest quarter of the northeast quarter of section thirty-three, township twenty-eight, range thirty-two. Said lease being for a term ending January 1, 1912,

with an extension provided for a further term ending January 1, 1916. And that said plaintiff was in possession of and claimed to be the owner of certain other machinery, tools and supplies located on said lease and other accounts, credits and assets located in Jasper county, Missouri; that plaintiff then and there being embarrassed by accounts unpaid and debts contracted in running and operating said mining lease and machinery, amounting to approximately $3800, and having no money or means with which to pay the same, and being desirous then and there of having said indebtedness liquidated, as a means thereto and providing therefor, plaintiff agreed to sell, assign and transfer all of its property and assets in Jasper county, Missouri, to this defendant for and in consideration of the sum of one dollar and the assumption by this defendant of the aforesaid mentioned debts and indebtedness, and this defendant agreed to purchase the same on the terms and for the consideration aforesaid, and thereupon an agreement in writing was made and entered into by and between the plaintiff and this defendant herein, being in words and figures as follows, to-wit:

" 'Know all men by these presents: That the Common Sense Mining & Milling Company, a corporation of the State of Missouri, party of the first part and H. L. Taylor, of Joplin, Missouri, party of the second part, witnesseth:

" 'That the said first party, for and in consideration of one dollar and the assumption and payment by the said second party of all debts of said first party amounting to about $3800, a schedule whereof is hereto attached and made a part hereof.

" 'The said first party hereby agrees to sell and assign to said second party or to his assigns all the property of said first party being situate in the county of Jasper, Missouri, to-wit: Lease on twenty acres of mineral ground belonging to B. F. Horton and

Luck K. Smith, more particularly described in the lease to one Coburn, of record in said Jasper county, and released to the New York and St. Louis Mining & Metal Co., and in lease executed by said Horton and Smith to the said first party dated the — day of January, 1906, and recorded in Book —, at page —, in the office of the recorder of deeds for said Jasper county, at Carthage, Mo., together with all machinery, tools and supplies at the mines, accounts and credits. an inventory whereof is hereto attached and made a part hereof.

" 'The said second party accepts said property with the understanding that this is in full and complete payment and discharge of all claims or debts against or due by said first party contained in the schedule hereto attached or any other just and legitimate claim not scheduled, but inadvertently omitted therefrom.

" 'That the sale and assignment herein provided shall be concluded and fully executed within ten days from the date hereof and that in the meantime till such consummation said second party to have care and custody of said property, to be relinquished at the expiration hereof should this conveyance not be followed by deed as herein contemplated.

" 'In Witness Whereof, the said parties have hereunto subscribed their names and affixed their seals. The said first party, its corporate seal affixed by authority of its board of directors, and the said second party his scroll seal. This 19th day of April, 1906.

"Common Sense Mining & Milling Co.
"G. A. Sanderson, President.
"H. L. Taylor   (Seal).
" 'Attest:
" 'J. A. Farquhar,
Secretary.'
"(Schedule of debts and machinery omitted)

"That afterwards and on, to-wit, the 27th day of April, 1906, it was agreed by and between the plaintiff and this defendant that said above mentioned contract be and the same was then and thereby extended for a further period of ten days.

"This defendant states that relying on the promises and agreements made by said plaintiff in said written contract and the extension thereof he proceeded at much cost and expense to himself in both time and money to induce capital to invest in said property. That he did, within the time mentioned in said contract and the extension thereto, induce F. W. Moore and J. W. Bushnell of the city of East St. Louis, Illinois, to purchase said property in said contract mentioned and to pay therefor a sum of money sufficient to pay off and discharge the obligations of said plaintiff in manner and form as provided in said contract and the extension thereof. That in order to induce the said F. W. Moore and J. W. Bushnell to purchase said property aforesaid and to pay therefor the amount of money sufficient to discharge the obligations of the said plaintiff as aforesaid, it became necessary for this defendant to and he did exhibit to them the aforsaid contract and acquaint them of the provisions thereof, and promise and agree with them to continue in control of and assume the active management of the mining property mentioned in said contract, under an agreement with said F. W. Moore and J. W. Bushnell that they would give him in consideration of his future management of said property a contingent one-third interest therein, and they to retain a two-thirds interest therein, but that this defendant should not have nor receive any dividends from said property until the said property should pay to the said F. W. Moore and J. W. Bushnell the moneys expended by them in the purchase of said property in paying off said claims as aforesaid, and that the moneys to be expended by them in the improve-

ments and operation of said property, and until the property was put on a paying basis.

"This defendant further states that he complied in full with all the conditions of said contract of purchase to be by him performed and in the time and manner thereby provided; that he paid, assumed and discharged all of the aforesaid debts in the manner provided in said contract and that this defendant did in all things perform and fully comply with all the terms and conditions in said contract by him to be performed.

"That this defendant then and there notified plaintiff that he had secured parties to take over said property and pay the indebtedness of said plaintiff and that he had fully complied with all the terms and conditions of said contract by him to be performed, and offered and tendered to plaintiff receipted bills for all of said indebtedness and then and there requested plaintiff to execute and deliver to him good and sufficient conveyance of all its property aforesaid.

"That this defendant, relying on the promises and agreement of said plaintiff in said contract contained and by virtue of said contract and in compliance with the aforesaid agreement with the said F. W. Moore and J. W. Bushnell, did, on or about the 4th day of May, A. D. 1906, begin the operation of said mining lease and machinery and to mine thereon in good faith and has continued to operate the same in good faith ever since and has expended large sums of money thereon, to-wit, the sum of approximately $16,012.54, in developing and improving said mining lease and mining property and the further sum of approximately $4375, in purchasing additional machinery and mining equipment for said property.

"This defendant further states that plaintiff has wholly failed to comply with the agreements and conditions of said contract on its part to be kept and per-

formed, and has failed and refused and still fails and refuses, although many times so requested to do, to execute and deliver to plaintiff good and sufficient conveyance to all of its said property aforesaid or any part thereof.

"Wherefore this defendant prays a decree that plaintiff be directed to convey by good and proper conveyance all of the aforesaid property to be in this defendant, and for such other and further relief as to the court may seem meet and proper."

Defendants Moore and Bushnell pleaded the same contract, and allege that after seeing the contract and an extension thereof, and making inquiry as to the property, they purchased the same from Taylor, relying upon such contract. The additional material portions of their answer being:

"And the said H. L. Taylor acquainted them with the provisions of said contract and extension thereof, and described to them the location of the property therein described and the approximate amount of the debts against the said Common Sense Mining & Milling Company and importuned them and each of them to purchase said property. These defendants then and there agreed with the said defendant H. L. Taylor, to purchase said property upon the terms mentioned in said contract and extensions thereof, provided that said defendant H. L. Taylor, would agree to enter into the active control and management of said property and the operation thereof, these defendants then and there agreeing with said H. L. Taylor that in consideration of his entering into said active control and management of said property and the operation thereof and his services thereby to be rendered to give him a contingent interest in and to said property.

"Defendants further state that they proposed that he should and the said H. L. Taylor agreed to actively and personally manage and operate said

property and out of any and all proceeds from said property these defendants were to receive:

"1st. Any and all moneys which they expended in the purchase of said property and in its improvement and operation and that relying upon the good faith of the said Common Sense Mining & Milling Company, and upon its agreements in the aforesaid contract contained, and extension thereof, these defendants purchased said property and paid to said H. L. Taylor a sum sufficient to pay off and discharge all of the debts and obligations of the said Common Sense Mining & Milling Company, as provided in said contract, and directed him to proceed at once to pay off and discharge the obligations and debts in said contract and extensions thereof mentioned. And that said H. L. Taylor forthwith and in the time and manner provided within said contract and extension thereof paid off and discharged all of the debts and obligations of plaintiff in said contract mentioned.

"Defendants further state that, relying upon the good faith of the plaintiff and upon its promises made in said contract and extension thereof, they did on or about the 4th day of May, 1906, authorize, empower and direct the said H. L. Taylor to enter into the active control, management and operation of said mine and property; that the said H. L. Taylor did, on said last-mentioned date, by virtue of the said contract and extensions thereof, between plaintiff and himself, and in conformity with these defendants' directions and agreement, begin to operate and manage said property and mining lease and that he has, from that day to the present time, continued to operate and manage the same in good faith.

"The defendants further state, relying upon the good faith of the plaintiff and upon the promise made in the aforesaid contract and extension, that they have, since said 4th day of May, 1906, and up to the present time, expended necessarily in the develop-

ment and improvement of said property and mine under said management and operation approximately the sum of $17,000, and that these defendants have expended the further sum of approximately $5000 in purchasing machinery and mining equipment for said property and mining lease. That all of said amounts have been expended necessarily and in good faith and for the purpose of the betterment of said property and mining lease.

"The defendants further state that the said H. L. Taylor did, on or about the 4th day of May, A. D. 1906, notify the said plaintiff that he had sold said property and mining lease and that he had paid off and discharged the obligations of said plaintiff as mentioned in said contract and extension, and then and there requested said plaintiff to execute and deliver to him a good and sufficient conveyance of all of said property mentioned in said contract and that said plaintiff then and there failed and refused and still fails and refuses, although many times requested so to do, to execute and deliver to said H. L. Taylor a good and sufficient conveyance to all of said property aforesaid or any part thereof.

"Wherefore these defendants pray a decree that plaintiff be directed to convey by good and proper conveyance the aforesaid mining lease and property to the defendant H. L. Taylor so that the same may be properly and justly adjusted between said H. L. Taylor and these defendants, or that the title of the aforesaid mining lease and property be vested in these defendants and divested from plaintiff, and for such other and further relief as to the court may seem meet and proper."

The reply covers 20 large closely printed pages. It charges bad conduct upon the part of Taylor in selling the company some electric drills and machinery long prior to the contract. It charges that Taylor whilst installing the machinery and drills dis-

covered that the mine was a good one and conceived the idea of beating plaintiff out of it. It charges that the contract signed by its president and secretary was not in fact the contract agreed upon with Taylor. It charges so many things that we shall not go further at this time than to add that plaintiff's chief charge and contention is that there was no legal meeting of its board of directors at the time the contract was ordered executed, and hence the contract made by its president and secretary was void. This sufficiently outlines the pleadings.

The trial judge made some findings of fact in his judgment, thus:

"This cause coming on for hearing on this 29th day of June, 1907, the parties to this cause, both plaintiff and defendant, appear by their respective counsel of record, and no party, plaintiff or defendants, requesting or asking a jury, all the parties to said cause waiving a jury, the cause is submitted to the court upon the pleadings and evidence for final determination and judgment. The court finds the allegations of plaintiff's petition charging 'that plaintiff was entitled to the possession of the following described premises, situate in the county of Jasper and State of Missouri, to-wit: The east one-half of the southwest quarter of the northeast quarter, of section thirty-three, township twenty-eight, range thirty-two, and being so entitled to the possession thereof that the defendant H. L. Taylor afterwards, on the 19th day of April, A. D. 1906, entered into such premises, and unlawfully withholds from plaintiff the possession thereof,' is not, upon consideration of the evidence, sustained, and therefore finds against plaintiff as to and upon said allegations of fact. The court further finds that the charges made in the petition of waste and damage occasioned by the defendant H. L. Taylor, to plaintiff's injury, are not sustained upon consideration of the evidence and finds against plaintiff

as to and upon said allegations of fact. The court
further finds that the allegations of the answer of the
defendants F. W. Moore and J. W. Bushnell as to the
execution of the contract, set out in said answer un-
der date of April 19, 1906, are true. That by the terms
of said contract, the plaintiff purported to contract
and agree for and in consideration of one dollar and
the assumption and payment by the defendant H. L.
Taylor of all debts of the plaintiff, amounting to
about $3800, to convey to said defendant Taylor, or
to his assigns, the property in controversy in this suit;
that said contract was ordered by plaintiff at a spe-
cial meeting of the board of directors at which said
meeting more than a majority of said board, to-wit,
five, were present, and two were absent; that notice of
said special meeting was not given as provided by
the by-laws of plaintiff; that said contract was ex-
ecuted and signed by plaintiff by its president, at-
tested by plaintiff's secretary, as ordered by said
board of directors at said meeting. That upon the
execution of said contract (the same having been by
plaintiff signed and delivered to the defendant Tay-
lor) possession of the premises in controversy was
under said contract turned over by plaintiff to the
defendant, H. L. Taylor, who thereupon held the same
in good faith and so complied, while so holding, with
the said contract of purchase, and complied with all
the conditions of the lease to him transferred by
plaintiff by the said contract. That in order to carry
out and perform the obligations on his part under
said contract, executed as aforesaid, and in order to
procure adequate funds to pay and discharge the ob-
ligations of plaintiff in said contract, mentioned, the
defendant H. L. Taylor, contracted to and did assign
to the defendants F. W. Moore and J. W. Bushnell all
his right, title and interest in the property in con-
troversy, the said Moore and Bushnell having no

knowledge of the want of notice given at the special meeting aforesaid and acting in good faith and relying on said contract and believing the same to be authorized by plaintiff; that at the time of entering into said contract with the said H. L. Taylor, the plaintiff was in embarrassed circumstances, financially, and in an insolvent condition, and without credit, means or funds wherewith to pay its divers obligations and debts, many of which were past due and were being pressed for collection; that plaintiff, with full knowledge of the terms of said contract and knowledge of the facts that H. L. Taylor had assigned the same to obtain funds for the purpose therein mentioned, stood by in silence, while the defendants Moore and Bushnell in good faith, relying upon said contract, and upon the right of assignment thereunder, did discharge all of said indebtedness of plaintiff as stipulated in said contract, so that, of said indebtedness, nothing remains, and thereby plaintiff was and is forever released and discharged of all of its said debts. The court finds that defendants F. W. Moore and J. W. Bushnell, having entered upon the premises in controversy as assignees of the defendant H. L. Taylor, under said contract, have in good faith, necessarily and for the preservation and betterment of said property and mining lease, expended a large sum of money, to-wit, about eighteen thousand dollars above the receipts of said mine and lease, whereby said property was and is developed and rendered more valuable and increased in value to said amount and more. The court finds that plaintiff having had and obtained the benefit of the funds and labor of defendants, commenced their action herein without tendering or offering to the defendants to refund or repay any of the moneys paid in discharge of plaintiff's debts, to plaintiff's advantage, and with its knowledge and acquiescence under and in recognition of the contract aforesaid. The court finds that the defendant H. L. Tay-

lor and his assignees, the defendants F. W. Moore and J. W. Bushnell, have complied with the conditions of said contract upon their part, and having so complied have demanded the conveyance of the property in controversy in accordance with the terms of said contract by plaintiff, and although said demand has often been made the plaintiff has neglected, failed and refused to make and deliver such conveyance.

"The court further finds that the plaintiff has not, since this action has been pending, reimbursed or offered to reimburse or pay to the defendants Moore and Bushnell the sums of money paid, in good faith, to the plaintiff's benefit and the release and discharge of the plaintiff's debts, as provided in said contract and to pay the defendants the amount necessarily paid in good faith by them for and toward the development, betterment and preservation of said property and lease, and that the plaintiff, although pending the trial of this cause was given an opportunity and reasonable time in which so to do, has failed, neglected and refused to pay the debts paid on its account aforesaid, or pay the sums expended by said defendants for the preservation of the property and lease, aforesaid, or to pay any part of either. The court further finds that the defendants F. W. Moore and J. W. Bushnell are the assignees of the defendant H. L. Taylor, to all the right, title, interest and claim of said Taylor and of all the right, title, interest and claim of the plaintiff in and to the property in controversy, and that the plaintiff, with full knowledge of the facts, has accepted, received and enjoyed all the benefits to it reserved and provided by said contract with defendant Taylor, but fails and refuses to perform said contract on its part. The court further finds that the plaintiff by its acts and conduct ratified said contract and is estopped to deny said F. W. Moore and J. W. Bushnell the ownership of the property in controversy, and estopped to assert or claim that the

said contract was or is void. It is therefore ordered, adjudged and decreed, by the court.

"First: That the plaintiff take nothing by its action herein against the defendant H. L. Taylor, and that said defendant have judgment for his costs herein expended.

"Second: That the plaintiff take nothing by its action herein against the defendants F. W. Moore and J. W. Bushnell or from either of them.

"Third: That all right, title, claim or interest of the plaintiff in or to the property described in plaintiff's petition, hereinbefore set out, as well as all right, title, claim or interest in and to the personal property in said contract mentioned, to-wit: Hoisting engine and connections, Westinghouse motor, Westinghouse generators, transformers, switchboard and connections, blower engine and blower, tubs, cars, rails and cables, tools of all kinds and descriptions, electric drills, columns, tripods and steel, oil supplies in oil house, telephones, steam pipe and connections used underground and belting, be divested out of plaintiff, and the same is hereby so divested, and that all said right, title and interest in and to all of said property be and the same is hereby vested in defendants F. W. Moore and J. W. Bushnell, and the same is hereby so in them vested. That plaintiff be and hereby is forever estopped as against said defendants from claiming any right, title or interest in or to said property or any part thereof.

"Fourth: That plaintiff be taxed with the costs of this suit and that execution issue therefor."

Other material matters will be noted in the course of the opinion.

I. Upon the whole the evidence justifies the findings of the trial court. The court finds that only five of the seven directors were present when the contract

of April 19th was ordered.  The court also finds that there was no notice as provided by the corporation charter to the two absent directors.  There is some evidence tending to show that these two directors did in fact have notice of the meeting of the directors at which this contract was ordered, but we shall accept the finding of the court, *nisi,* upon this question, and discuss the case from that standpoint, for in our view of the law, that point may be conceded, and yet the decree *nisi* sustained.  It is clear from the evidence that the plaintiff corporation was badly in debt, with no available means of meeting the debts, and its directors and officers were anxious to make some disposition of its property, i. e., the lease and machinery, in order to get out of debt.  It is also clear that defendants Moore and Bushnell acted in good faith and without any knowledge of the alleged defect in the contract of date April 19.   They furnished the money to pay plaintiff's debts in the utmost good faith relying upon the contract, and they took possession of the mine in good faith, and thereafter spent large sums of money thereon in the same good faith.  This, however, comes more properly in the discussion of the real question in the case.

II.   The trial court found that the plaintiff was estopped from denying the validity of this contract, and we think under the evidence and law, such was a proper finding.

Within the ten days prescribed by the contract Taylor notified the president of the plaintiff corporation that he thought he had a party who would buy the property, referring to defendants Moore and Bushnell, though not mentioning them.  He asked for an extension of ten days, and the president of plaintiff by wire granted the extension.  The original contract and this wire were presented to Moore and Bushnell and upon the strength of them they purchased and

took possession. The corporation being in failing circumstances the directors had the legal right to dispose of its assets to pay its debts.

The contract of April 19, was valid upon its face, and carried with it the presumption that it was duly authorized. In fact it recited that it was fully authorized by the directors of the plaintiff corporation. Not only so, but it was recognized as a valid contract, when later the officers duly executed and placed in escrow an assignment of the lease and other property of the plaintiff.

But in addition to this on September 25, following, the corporation, through its directors fully recognized the contract of April 19, by passing a resolution to rescind the contract. That resolution as offered by the plaintiff reads: "And be it further resolved that the contract between said company and H. L. Taylor bearing date 18th day of April 1906, be and is hereby rescinded and annulled."

On the same day in a letter to the Conqueror Trust Co. of Joplin, Missouri, the company which held the assignment mentioned supra in escrow, the reason for the attempted rescinding of the contract is thus set forth by the plaintiff company.

"You are hereby further notified that H. L. Taylor for whom said written documents were deposited in escrow in your custody by said company has wholly failed to perform his contract with said company and that said Common Sense Mining & Milling Company has rescinded and annulled said contract."

It will be observed that throughout the plaintiff acted in full recognition of the contract, but tried to rescind it upon the ground that its terms had not been complied with by Taylor or his assignees. The trial court under the evidence found that there had been a compliance with the contract, and that the contract had been fully performed by Taylor and his assignees Moore and Bushnell. This finding is fully justified

by the evidence. In fact the court could not be justified had it found otherwise upon this point. Going more direct to the question of estoppel. The knowledge of plaintiff's president is the knowledge of plaintiff itself. This is elemental, and the only possible exception would be where there was fraudulent conduct upon the part of such officer participated in by defendants, and which exception is not borne out by this record.

Under the proof plaintiff knew that its debts were being paid by Taylor and his assignees. It knew that defendants were operating the mine and improving it at their own great expense. It knew that all this was being done in good faith under this contract to convey. It accepted the full fruits of the contract without complaint or murmur, and after its debts had been fully paid by Moore and Bushnell, and after they had expended some $18,000 in betterments of the property, and after five long months of delay, the plaintiff finally concludes its contract was never legally made, and brings this suit to recover the property, all the betterments, as well as damages for ore taken out. A bare statement of the facts makes the case smack of fraud and inequity. It does not appeal to our better sense of justice and right. No offer to place defendants in *statu quo*. No offer to do equity, although the trial judge recites that opportunity was given plaintiff to make such offer. On the other hand, plaintiff stands mute throughout, demanding its former property with all betterments, and most graciously accepting nearly four thousand dollars of its debts which were paid by the defendants. If any law can be found to throttle such a monstrosity it should be found, and we think the trial court found it, when in its judgment it declared that the plaintiff by its own acts was estopped to deny the contract.

The plaintiff should be estopped on the ground of preventing a fraud by the corporation on Moore

and Bushnell, the real parties defendant, whom it had misled into the full performance of the agreement.

In Smith v. Richardson, 77 Mo. App. 1. c. 430, BOND, J., clearly states the legal principle involved in this case. His remarks are so pointed and well worded that we quote at some length, rather than undertake a formulation of the rule ourselves:

"In determining the obligation of a private corporation for acts commonly termed *ultra vires,* an important distinction, noted in every well reasoned case, is sometimes overlooked. No corporation can bind itself or its stockholders by a contract expressly prohibited by its charter, by a statute, or by the general law. Such contracts are strictly *ultra vires* and create no obligation as far as they are executory, although the consideration therefor may have been received and enjoyed by the corporation. On the other hand, an act or contract merely in excess of the power granted to corporations, but which is not expressly forbidden either by its charter or the general law of the State, although lacking affirmative authority for its performance on account of the silence, on that subject, of its charter or the general law, may yet, if the contract has been executed by the other party and its consideration received by the corporation, bind the latter on the principle of estoppel so that it could not be annulled by the corporation without a return of the consideration received by it. Contracts of this kind are not in the strict sense of the term *ultra vires.* They are only unauthorized acts of corporations, and not being void, but only voidable, the option to avoid them is lost if they have been wholly executed or executed by the adverse party. [Thompson Con., sec. 6016 *et seq.*] The reason a contract strictly *ultra vires* as above defined, can never be enforced while anything remains to be done thereunder, is that a corporation deriving all its power to act from its constraining articles and the general law can make no

lawful contract in violation of the positive edicts of either. On the other hand, the estoppel of a corporation to annul an executed agreement or one whose consideration it has received (which though unauthorized, is not prohibited by law or its charter), is grounded on the idea of preventing a fraud by the corporation on the party whom it had misled into the performance of the agreement. A careful view of the controlling decisions will fully sustain this distinction between the enforcible and the nonenforcible acts of private corporations.''

At page 432 he further says: ''This contract was fully performed by both parties—the corporation got the delay of one year, and the holder of the note received the collateral. Having had the benefit of its agreement—the nature of which is such that it cannot be restored—the corporation now seeks to recover what it gave while retaining what it received. Upon the plainest principles of justice this cannot be done under a contract which, like the one in question, does not violate the provisions of its charter or the general law. That the contract of the president of the association was unauthorized by its board of directors and unratified by them as a body, may be conceded. This at most rendered it voidable only, not an absolute nullity. No steps having been taken to avoid the agreement prior to its full performance by both parties, it is too late for such action now.''

So in the case at bar. The contract made with Taylor was not void, but only voidable. It was not a contract *ultra vires,* but at most under plaintiff's contention, a contract which the corporation could make, but which it did not make on account of no authority given to the president to make it. This corporation stood by and saw this alleged voidable contract fully performed. It was performed with the full knowledge of its officers. Not only so, but it stood by and saw thousands of dollars expended on the property upon

the strength of the contract. Such conduct clearly estops it from denying the validity of the contract, and the trial court was right in decreeing that the title of the property was in Moore and Bushnell.

Judge Thompson, in 10 Cyc. 1065, says: "Subject to exceptions in the case of municipal or governmental corporations, which are held to a strict exercise of their powers, the general rule is that corporations quite as much as individuals are held to a careful adherence to truth in their dealings with mankind, and cannot by representations or by silence involve others in onerous engagements and then defeat the just expectations which their conduct has superinduced. A round statement of this doctrine is that estoppels *in pais* operate against corporations in like manner as against natural persons."

And further discussing the doctrine of estoppel as applicable to corporations, at page 1066 of the same volume he says: "As more fully explained later the same principle validates the voidable acts of corporations, on the theory of a ratification by the acquiescence of all the shareholders; so that after a long delay in which time other rights have supervened or expectations have been founded, upon the faith of an existing state of facts, the shareholders will be precluded from maintaining actions in equity to undo what has been done by the directors or officers without their authority."

The same writer in his work on Corporations— 2 Thompson on Corporations (2 Ed.), section 1960, page 1048—says: "In the law of agency there is a rule that if one accepts the benefits of an unauthorized contract made in his behalf by another, he is bound by its terms the same as if he had entered into the contract in person or had expressly ratified it; provided of course that he had full knowledge of all the facts, and he is thereby estopped from repudiating the contract without restoring the benefits and putting

the other party *in statu quo*. This principle is applicable, in its fullest sense, to corporations, which, from their nature, can act only through the instrumentality of agents. If, therefore, an officer of a corporation, or other person, assuming to have power to bind the corporation by a given contract, enters into the contract for the corporation, and the corporation receives the fruits of the contract, and retains them after acquiring knowledge of the circumstances attending the making of the contract, it will thereby become estopped from afterwards rescinding or undoing the contract. In other words, by retaining the fruits of the unauthorized contract with knowledge of the circumstances which entitle it to its election either to affirm or disaffirm it, the corporation ratifies the contract and makes it good by adoption.''

In the same volume at page 1056, it is further said: ''It is not strictly necessary to the proper application of the principle of estoppel that the corporation should have received a benefit from the contract but it is sufficient that the other party has acted on the faith of it to his disadvantage—as where he has expended money on the faith of it. The reason of the rule is that honesty and fair dealing are the highest public policy, and that a private corporation, which is a mere collection of individuals, is no more privileged to repudiate its engagements and act dishonestly than a single individual is.''

In 3 Clark & Marshall on Private Corporations, Sec. 680, p. 2084, it is said: ''Failure to give notice of a directors' meeting cannot be set up to defeat the rights of innocent third persons dealing with the corporation, for they have a right to assume that the meeting was regular.''

And in Sec. 682, p. 2090, of the same volume it is said: ''As a rule, illegality or irregularity in a directors' meeting cannot be set up to defeat the rights of innocent third persons dealing with the corpora-

tion, for, in the absence of notice to the contrary, they have a right to assume that the proceedings were legal and regular—that notice was given, that a quorum was present, that the meeting was called in the mode prescribed by the charter or by-laws, etc.''

In the case at bar the contract recited that it was made by authority of the board of directors. The real defendants were innocent third parties. In the face of this recitation in the contract, and under the law, the corporation should be estopped from denying the validity of this contract.

III. Indeed the trial court might have well put his decree upon the doctrine of ratification.

In 10 Cyc. 1073, the doctrine is thus stated: ''Where the president of a corporation executes in its behalf, and within the scope of its charter, a contract which requires the concurrence of the board of directors, and the board, knowing that he has done so, does not dissent within a reasonable time, it will be presumed to have ratified the act.''

The contract involved here was within the scope of the plaintiff's charter. No contention is made to the contrary. Such act of the president and secretary in this case was known to the corporation through its directors for more than five months. Under the circumstances of this case that is a reasonable time in which to disown the act of the officers, even if such act was not fully authorized. This delay upon the part of the corporation amounts to acquiescing in and ratifying the unauthorized contract. We need not go further into other questions urged and elaborately briefed.

The judgment *nisi* is a righteous one, and should be and is affirmed. All concur.